Stanley P. Danzig, J.
The plaintiffs in the three above-captioned .small claims actions are all tenants of defendant landlord suing herein to recover for the costs of renting air-conditioning units for their apartments during a period of six weeks last summer when the central air conditioning system supplied and maintained by defendant was not in operation.
Paragraph 15 of the standard form lease used by defendant provides: “As long as there shall be no breach or default by tenant in respect of any provision of this lease, landlord shall furnish, to the extent that the existing facilities permit, the following: (a) automatic elevator service; (b) hot and cold water in reasonable quantities at all times; (c) heat at reasonable hours during the cold seasons of the year; (d) gas for cooking purposes only; (e) a master television antenna; (f) refrigeration for food by installation of a refrigerator; (g) air conditioning by installation of one air conditioning unit in the living room of the apartment and in each room of the apartment *1098 designated by landlord as a bedroom, and (h) electricity. Interuption or curtailment of any service or services shall not constitute or be deemed to be an eviction by landlord, in whole or in part, actual or constructive, nor entitle tenant to any compensation or to any diminution or abatement of rent nor subject landlord to any liability for damages or otherwise. ’ ’ (Emphasis added.) The inclusion of air conditioning among such other services as hot and cold water, heat and refrigeration, indicates that air conditioning is deemed by the landlord, as well as by the plaintiff tenants, to be a basic necessity. It is clear that the landlord’s promise to provide air conditioning formed an inherent part of its consideration in return for which plaintiffs paid rent.
There is no question that plaintiffs did perform their obligations under the lease. The question to be determined concerns the proper interpretation and effect to be given the disclaimer of liability on the part of landlord in the event of its failure to supply the afore-mentioned services.
How do we interpret the clause which provides that ‘ ‘ interruption or curtailment of any service shall not * * * subject landlord to any liability for damages or otherwise.”
The lease does not say for how long the interruption or curtailment can continue.
Was interruption or curtailment intended to cover a complete stoppage of air conditioning for six of the summer’s hot weeks or did the parties intend to only avoid de minimis claims or lawsuits arising from interruptions or curtailment of only hours or a day or so.
If because of faulty draftsmanship, there was a failure to anticipate a future situation which arose (a six-week interruption), “ a court is faced not so much with the function of interpreting language as the parties intended, for their intention was incomplete, but of construing the language to accord with what would have been the intention and the honorable agreement of the parties if their attention had been drawn to the possible events as they actually were to occur.” (Rosenthal Jewelry Corp. v. St. Paul Fire & Mar. Ins. Co., 21 A D 2d 160, 165.)
I think that honest and fair-minded people expect to get what they pay for and to return that for which they have given nothing. The tenants paid for six weeks of air conditioning and the landlord did not furnish six weeks of air conditioning.
“ Having reasonably anticipated an agreed performance in exchange for his own, it is not in accordance with prevailing notions of justice that he should be forced to give something *1099 for nothing.” (3A Corbin, Contracts, § 728, p. 400.) If we cannot construe this agreement in accordance with the honorable intentions of fair-minded people, we are left with a one-sided disclaimer of liability which denies the tenants redress in the courts for the landlord’s breach of a binding promise to supply essential services, including air conditioning.
The freedom of contract in a free enterprise system presupposes some equality in the bargaining positions of contracting parties. It assumes that parties can protect their own rights and interests and avoid oppressive contracts by seeking bargains elsewhere.
It was in this free bargaining commercial setting that courts held that in the absence of fraud or misrepresentation, parties who have signed contracts will not be heard to say that they have not read it or did not know or understand or assent to its contents. (1 Williston, Contracts [3d ed.], § 90A.)
Unfortunately, the limited residential real estate market in New York City, especially Manhattan, allows no such freedom of choice. There is in fact a gross inequality of bargaining power which gives rise to standardized lease forms with some terms unreasonably favorable to the landlord. This is particularly the circumstance in large multiple dwelling complexes like that operated by the defendant herein.
The residential real estate market leaves no meaningful choices for a tenant and does not provide him with opportunities to bargain for reasonable terms and to avoid adhesive clauses. Even if the plaintiffs fully understood and appreciated the meaning of the waiver provision in Paragraph 15 in advance of signing, knowing that the housing which they desired and needed would be unavailable to them were they to refuse to accept the terms of the standard lease, the plaintiffs would have been forced by circumstances to sign the contract as it was drafted by the landlord.
Where clauses in form leases of this type are unreasonably weighted in favor of the landlord, they may be subject to the defense of unconscionability, and denied enforcement, (Stein-berg v. Carreras, 74 Misc 2d 32; Seabrook v. Commuter Housing Co., 72 Misc 2d 6; see Kessler, Contracts of Adhesion — Some Thoughts About Freedom of Contract, 43 Columbia L. Rev. 629.)
It has long been recognized in this State that a tenant has a cause of action against a landlord for breach of covenants in the lease, despite disclaimers in the lease. “It is entirely rational and consonant with every precedent that the tenant is entitled to be compensated for the breach of covenant pn the *1100 part of Ms landlord precisely as he would he for the breach of any other agreement on the part of one who had contracted with Mm.” (Volga Realty Corp. v. Chauncey Holt Co., 104 Misc. 581, 585-86; Steinberg v. Carreras, supra; Borchardt v. Parker, 108 N. Y. S. 585.)
The disclaimer being unconscionable and unenforceable, the plaintiffs may recover for breach of the remaining portion of Paragraph 15 in which landlord covenanted to furnish air conditiomng. ‘ ‘ It has been repeatedly held that the tenant may recover the cost .of doing that which the landlord has agreed to do but has not done.” Volga Realty Corp. v. Chauncey Holt Co., supra, p. 586.)
Judgment shall therefore be entered in favor of plaintiff Herbert Harwood in the sum of $101.65 plus costs and disbursements ; in favor of plaintiff Wendy Bowie Evans in the sum of $197.95 plus costs and disbursements; and in favor of plaintiff Millie Shogan in the sum of $197.95 plus costs and disbursements.