STANLEY N. MILLER, Plaintiff-Appellant, *v.* FIRST. HAWAIIAN BANK, CHARLES H. DOLE, GILBERT W. ROOT and CAMPBELL W. STEVENSON, Defendants-Appellees

NO. 6229

DECEMBER 17, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ., RETIRED JUSTICE MARUMOTO AND CIRCUIT JUDGE LUM ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY LUM, CIRCUIT JUDGE

This is an appeal by plaintiff-appellant Stanley Miller from the order of the circuit court granting summary judg-

ment for defendants-appellees First Hawaiian Bank, Charles Dole, Gilbert Root and Campbell Stevenson. We affirm.

On July 8, 1955, appellant established a trust with Cooke Trust Company, Ltd.[1] as Trustee and himself as the sole lifetime beneficiary.

On August 31, 1955, appellant leased his property at 1517-1537 Wilder Avenue, Honolulu, Hawaii ("Punahou Cliffs") to Jacob R. Jacobsen for sixty years; he later sold all buildings and improvements thereon to Jacobsen. The underlying fee interest in Punahou Cliffs was conveyed by appellant to Cooke Trust Company and became part of the Miller trust estate, subject to the lease.

Upon Jacobsen's death in 1966, the leasehold vested in Bernard H. Levinson, Trustee under Jacobsen's will. Thereafter Levinson began efforts to sell the leasehold. Appellees informed appellant of Levinson's efforts; a series of communications followed.[2] Prior to Jacobsen's death, appellant had on several occasions encouraged appellee Bank to explore the feasibility of selling its fee interest in Punahou Cliffs. Upon learning of Levinson's efforts to sell the leasehold; Miller informed appellees of his personal interest in purchasing the Jacobsen leasehold; it was his expectation that once he acquired the leasehold he could merge the lease and the fee to increase the property's value. He asked appellees for "their [Levinson's agents'] address so I could write them directly." Appellee Root responded:

Mr. Philip Thomas, of Island Homes, 916 Fort St., Honolulu, Hawaii, 96813, has the listing on the Jacobson [sic] lease. I informed him of your possible interest and he furnished me with the enclosed brochure which he has put out in connection with his sales offering. I told him that he probably would hear direct from you. I also mentioned to him that I did not believe you were interested at

---

[1] First Hawaiian Bank later became the successor to Cooke Trust Company in the administration of the 1955 Indenture of Trust.

[2] These communications were made primarily by letter since Miller was at that time living in Paris.

his present asking price of $250,000. He informed me that Judge Levinson, who is the Trustee of the Jacobson [*sic*] Estate feels quite strongly about this price because of the probate appraisal of $230,000 in 1965.

On June 22, 1968, appellant wrote Root:

Without going into the matter too deeply, I think the price of $250,000 for the Punahou Cliffs' buildings seems too high. . . . Shall we leave this possible purchase open for further consideration at a later date, when I will have visited Honolulu.

Appellant at no time made an offer to the Jacobsen Estate to purchase the leasehold interest in Punahou Cliffs.

On October 4, 1968, Levinson sold the leasehold interest under an agreement of sale to Punahou Cliffs corporation for $215,000. On October 9, 1968, appellee Bank consented[3] to the sale without notifying appellant.

On July 31, 1975, appellant filed a complaint in two counts.[4]

---

[3] The lease provided that "the Lessee shall not, without the prior written consent of the Lessor, assign or mortgage this lease. . . ."

[4] Count I states:

16. Upon being notified by defendant First Hawaiian that the leasehold interest and buildings were available for sale, plaintiff directed defendants not to consent to any sale by the Estate without first obtaining the consent of plaintiff and giving plaintiff the opportunity to purchase said leasehold interest and buildings at the price and on the terms offered by any third party.

. . . . .

18. On or about October 9, 1968, without notifying plaintiff or affording plaintiff an opportunity to purchase the leasehold interest or the buildings, and in breach of the express instruction theretofore given by plaintiff to defendants, defendant First Hawaiian executed a consent to the Agreement of Sale. . . .

Count II states in pertinent part:

In preparing the consent of defendant First Hawaiian to the Agreement of Sale . . ., Defendants carelessly and negligently and in breach of their fiduciary responsibilities to plaintiff failed to expressly hold the Estate of Jacob R. Jacobsen liable for the performance of the lessee's obligation under the aforesaid lease in the event of any default in performance thereof by Punahou Cliffs Corp.; and further, carelessly and negligently and in breach of their fiduciary responsibility to plaintiff, failed to obtain personal guaranties of such obligations from the principal stockholders of said Punahou Cliffs Corp. . . .

Under H.R.C.P., Rule 56(c), a summary judgment will be rendered only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lau v. Bautista*, 61 Haw. 144, 598 P.2d 161 (1979); *City and County of Honolulu v. Toyama*, 61 Haw. 156, 598 P.2d 168 (1979); *Hunt v. Chang*, 60 Haw. 608, 618, 594 P.2d 118, 124 (1979). *See* 6 Moore's Federal Practice ¶ 56.17[68] at 56-1100 (2d ed. 1976).

On review of a summary judgment proceeding, the standard to be applied by this court is identical to that employed by the trial court. *Gealon v. Keala*, 60 Haw. 513, 518, 591 P.2d 621, 625 (1979); *Technicolor v. Traeger*, 57 Haw. 113, 118, 551 P.2d 163, 168 (1976). Thus, the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion. *Id*.

Appellant now contends that the Trustee, aware of appellant's personal interest in purchasing the Jacobsen leasehold, had the fiduciary duty to notify him before consenting to the Agreement of Sale so that appellant would have had sufficient opportunity to purchase the leasehold. This duty arose out of the mere existence of the trust relationship, appellant argues, irrespective of the Trustee's more limited duties under the specific terms of the Trust Agreement.[5]

---

[5] The Indenture of Trust in the case at hand clearly granted plenary power to the Trustee over the control of the trust property; the discretion of the Trustee with respect to the administration of the trust estate was "sole and absolute." Further, there was absent from the Trust Agreement any provision which could be fairly construed to require that appellant's consent be obtained prior to the Trustee's exercise of such discretion. The Settlor, however, expressly reserved the right to amend or modify the Trust:

> (m) The Settlor expressly reserves the right to cancel, revoke, amend, alter, or modify in whole or in part this Indenture of Trust . . . by instrument in writing, duly acknowledged and delivered to the Trustee. . . .

Where a settlor reserves a power to modify a trust only in a particular manner or under particular circumstances, he can modify the trust only in that manner or under those circumstances. *Restatement (Second) of Trusts* § 331, Comment *d* (1959); Bogert, *Trusts & Trustees* § 993 (2d ed. 1962). Appellant claimed that the plenary·

It has been recognized that:

> If the cestui is to be able to hold the trustee to proper standards of care and honesty and procure for himself the benefits to which the trust instrument and the doctrines of equity entitle him, he must know of what the trust property consists and how it is being managed.

Bogert, *Trusts & Trustees* § 961 (2d ed. 1962). The *Restatement (Second) of Trusts* § 173, Comment *d* (1959), accordingly notes that the trustee:

> is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person with respect to his interest.

Appellees, although conceding that a trustee does indeed have the duty to keep a beneficiary informed of facts concerning the administration and management of the trust estate, deny the applicability of the rule to the facts of the instant case. We agree.

The duty of a trustee to inform a beneficiary of facts which the beneficiary needs to know for his protection in dealing with a third person arises only when such facts affect the beneficiary's interest in the trust property. The Jacobsen leasehold of Punahou Cliffs was clearly not trust property. Appellant merely asserted a personal interest in the possibility of purchasing the leasehold interest, expecting that a merger of the lease and fee interests would enhance the value of the property. Under these circumstances, we hold that the duty to inform never arose. *See Restatement (Second) of Trusts* § 75 and § 173, Comment *d* (1959); Bogert, *Trusts & Trustees* § 113 (2d ed. 1965).

---

power of the Trustee was modified by the "understanding" arrived at through discussions with appellee Root, who had orally assured him that he would have the opportunity to present an offer to the Jacobsen Estate; since the Bank had to consent to any sale or assignment of the leasehold; the Bank would notify him in time to make an appropriate offer. In view of the absence of a written and acknowledged modification of the Trust Agreement, the court below properly rejected the argument that the Trustee was obligated under the Trust Agreement to obtain appellant's consent before dealing with the leasehold interest.

We now examine the question of the trustee's alleged negligence.

In the exercise of its discretion under the plenary powers of the Trust Agreement[6] over trust property, First Hawaiian Bank as trustee must be held to the standard of ordinary care and diligence. *Steiner v. Hawaiian Trust Co.*, 47 Haw. 548, 393 P.2d 96 (1964); *Hartman v. Bertlemann*, 39 Haw. 619 (1952). Where discretion is conferred upon a trustee with respect to the exercise of a power, its exercise is not subject to interference by the court except to prevent an abuse by the trustee of his discretion. *Dowsett v. Hawaiian Trust Co.*, 47 Haw. 577, 393 P.2d 89 (1964); *Restatement (Second) of Trusts* § 187 (1959). *See also* note 5, *supra*.

We find no abuse of discretion by the Trustee herein and no merit to appellant's allegation of negligence, particularly

---

[6] Paragraph (d) of the Indenture of Trust provided that:

Subject to the provisions of paragraph (i) hereinafter set forth, and without prejudice to the generality of the powers expressed herein, the Trustee is expressly and specifically authorized in the administration of the Trust Estate, in its sole and absolute discretion and without the approval of any court or other governmental agency, with respect to any property at any time constituting a part of this Trust Estate:

1. To retain the same for such period or periods of time as it shall deem advisable;

2. To sell at any public or private sale, convert, transfer, assign, exchange, mortgage, hypothecate and otherwise deal in or dispose of the whole or any part of the property, real, personal, or mixed, which may be from time to time a part of the Trust Estate . . .;

. . . .

4. To manage, maintain, alter, repair, improve, develop, lease for any term . . ., subdivide, partition or otherwise dispose of any real or personal property or interest therein . . . in such manner and upon such terms and conditions as it shall deem advisable, and to enter into contracts with respect to any of the foregoing;

. . . .

6. To consent to the subordination, modification, renewal or extension of any note, bond, mortgage, open account indebtedness or other obligation, whether or not secured or evidenced by any writing, or any term or provision thereof or of any guaranty thereof, or to the release of any such guaranty; . . . .

. . . .

14. Generally, to exercise all such rights and powers and to do all such acts and things and to enter into all such agreements as persons owning similar property in their own right may lawfully exercise, do or enter into.

in view of the fact that the Jacobsen Estate, even after consent by appellees to the Agreement of Sale, would remain fully liable under the terms and conditions of the lease.

*Lawrence I. Weisman (James P. Conahan* and *Roger W. Fonseca* on the brief) for plaintiff-appellant.

*D. Scott MacKinnon (Harold W. Nickelsen* with him on the brief; *Hamilton, Gibson, Nickelsen, Rush & Moore* of counsel) for defendants-appellees.