CITY AND COUNTY OF HONOLULU, a municipal corporation, Plaintiff-Appellee, *v.* FRANK ELBERT MIDKIFF, et al., Trustees under the Will and of the Estate of Bernice Pauahi Bishop, Deceased, Defendants-Appellees, and ROBERT H. SNYDER, Defendant-Appellant, and JOHN J. STANFORD, et al., Intervenors

NO. 6161

AUGUST 25, 1980

RICHARDSON, C.J., OGATA, MENOR,
LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY OGATA, J.

Robert H. Snyder, defendant-appellant, appeals from the decisions of the First Circuit Court granting summary judgment to the City and County of Honolulu (hereinafter "City") and the Trustees Under the Will and of the Estate of Bernice Pauahi Bishop (hereinafter "Bishop Estate") in an eminent

412

domain proceeding and a Crossclaim action arising therefrom.[1]

On March 20, 1974, the City initiated an eminent domain proceeding[2] against certain property owned in fee simple by the Bishop Estate and leased by it to the appellant. The lease between the appellant and the Bishop Estate was entered into in 1964.

A short history of the property which is the subject of this appeal will assist in understanding the issues. On May 7, 1964, the Oahu General Plan was enacted. According to that document, the property was in an area planned for residential development. The Comprehensive Zoning Code, later enacted in 1969, classified the property as R-3 residential under Section 21-501(a)(5).[3] Although one of the permitted uses for R-3 property was park use, the Parks and Planning Departments felt that a General Plan amendment was necessary before the property could become a park. On May 9, 1972, the 1964 General Plan Land Use Map was amended to redesignate the property from residential to park use. The City Council passed Resolution Number 262 on January 17, 1974. The resolution provided for the acquisition of land for beach rights-of-way and parks in the Koko Kai area. As the appellant's property was one of the lots affected, he challenged the City's condemnation proceeding. During the pendency of his appeal, the City Council repealed the 1964 General Plan and adopted a new General Plan in 1977.

The appellant answered the City's eminent domain complaint on April 10, 1974, alleging that the City had no power to condemn the property without first amending the 1964 General Plan. The appellant argued further that the City's rede-

---

[1] The property involved in this appeal is Lot 23, Tax Map Key 3-9-28:19, located in Koko Kai, Maunalua, Oahu, Hawaii.

[2] HRS § 101-2 (1976) provides in part that "[p]rivate property may be taken for public use." The appellant questions whether the taking in this case was for a public use. The City Council's resolution in 1974 providing for the acquisitions of the property is dispositive on this issue. We will not question the City Council's decision.

[3] This section is now renumbered as 521-501(a)(4).

signation of the property from residential to park use was not a satisfactory amendment due to alleged procedural deficiencies.

On October 1, 1975, the City filed a Motion for Summary Judgment against the appellant. The City argued that no amendment of the 1964 General Plan was necessary to create a park on the appellant's property. Alternatively, the City stated that even if the trial court found that an amendment was required, the 1972 amendment procedure was sufficient. The trial court granted the Motion for Summary Judgment on both grounds.

The appellant also filed a Crossclaim against the Bishop Estate questioning the validity of the condemnation clause in the lease between him and the Bishop Estate. The lease was for a 55-year term and contained the following pertinent terms. The appellant agreed to pay and paid a lease premium of $40,000.00 to the Bishop Estate for the construction of off-site improvements in the subdivision. In addition the appellant paid lease rent of $3,300.00 per year for the first thirty years of the lease, all property taxes, insurance and other assessments on the property. The condemnation clause in the lease stated that, in the event of a condemnation action, the appellant would not be entitled to compensation for any leasehold interest and would receive only the value of improvements he himself had made to the property.[4] The appellant contended, in opposition to Bishop Estate's Motion for Summary Judgment, that this clause was unconscionable and therefore invalid.

On October 31, 1975, the Bishop Estate moved for summary judgment on the Crossclaim by the appellant. The Bishop Estate contended that the condemnation clause in the lease between it and the appellant was valid and controlling. The trial court granted the Bishop Estate's Motion against the appellant.

The appellant appeals from both decisions of the trial court. For the reasons delineated below, we affirm in part and reverse in part.

---

[4] The condemnation clause is set out in full in Part II of the opinion.

I.

The appellant's first contention is that the trial court erred when it granted summary judgment in favor of the City in the condemnation action. The appellant argued that the City had no power to condemn the property without first amending the 1964 General Plan and that the City's attempt to so amend the Plan was procedurally deficient according to the guidelines set out in *Dalton v. City & County of Honolulu*, 51 Haw. 400, 462 P.2d 199 (1969) and *Hall v. City & County of Honolulu*, 56 Haw. 121, 530 P.2d 737 (1975).

We do not discuss the appellant's arguments concerning the 1964 General Plan in this opinion. The enactment of the 1977 General Plan during the pendency of this appeal makes it unnecessary to consider the old plan. It is well-established that, absent special circumstances, an appellate court will decide an appeal on the basis of the law as it exists at the time of its decision. *Atlantic Richfield Company v. Board of Supervisors*, 40 Cal.App.3d 1059, 1065, 115 Cal.Rptr. 731, 735 (1974); *Burgarella v. Planning and Zoning Commission*, 240 A.2d 211, 212 (Conn. 1967); *Stato v. Squicciarini*, 59 App. Div.2d 718, 719, 398 N.Y.S.2d 373, 374 (1977); Anderson, 1 *American Law of Zoning* § 25.31 (2d ed. 1977); 8A McQuillin, *The Law of Municipal Corporations* § 25.338 (3d ed. rev. 1976). In this appeal, therefore, the court must determine whether the condemnation of the appellant's property for use as a park is consistent with the 1977 General Plan.

The 1977 General Plan is a flexible social guide to long-range development in Hawaii. It is by design a broad-based and general document. In this respect it differs from the earlier General Plan which was a more detailed physical development guide. The Final Report of the Charter Commission, City and County of Honolulu, 1971-72, discussing changes in the definition of a general plan to be included in the 1973 Charter stated:

> The new definition of the general plan has had most of the present physical detail removed from it for three principal reasons. The first is in line with the commission's philosophy that policy planning for the city should

no longer be limited to physical planning. Attention is hence called to the phrase 'distribution of social benefits' as an objective to be accomplished. Furthermore, planning is to be treated as an ongoing process in which the general plan then is not a single best picture or golden flash of the city at some future point in time but rather a set of policies and objectives for its development. Some would be appropriately expressed in graphics form and others not. It is the intention of the Charter Commission that the term 'development objective' be construed liberally and in light of the Commission's emphasis on the purposes of planning and the need for comprehensive planning, rather than be limited to its land use or physical connotations.

Finally, by redefining the general plan as a set of policies and objectives, it is intended that the burdensomeness of amending the general plan encumbered by the Dalton decision (Dalton et. al. v. City and County of Honolulu, et. al., 51 Hawaii 400) be lifted. It is to be adopted or amended by resolution, and the mayor is empowered to approve or reject it. *Its standing as a resolution, rather than an ordinance, means that it is not a law, but a guide or policy statement.* (Emphasis added.)

One of the expressly stated objectives of the 1977 General Plan is the expansion and maintenance of Oahu's system of beach parks. 1977 General Plan, Objectives and Policies, No. 9 Culture and Recreation. The City's condemnation of the appellant's property for use as a park is consistent with this objective. Further support for the City's action may be found in the Comprehensive Zoning Code. Because the appellant's property was zoned R-3 under the Code, one of its permitted uses already was as a park. *See* Comprehensive Zoning Code §§ 21-501(a)(4) (1978 Supp.), 21-511 (1969), 21-521 (1969).

As the City's condemnation of the appellant's property for park use is consistent with both the Comprehensive Zoning Code and the 1977 General Plan, we hold that the condemnation action was valid and that summary judgment in favor of the City was proper.

416

## II.

In addition to filing an Answer to the Complaint previously filed by the City and County of Honolulu against the appellant and the Bishop Estate, the appellant initiated a Crossclaim against the Bishop Estate. The Bishop Estate was the fee owner and the appellant was the lessee of the property involved in the original condemnation action. The appellant contended that the condemnation clause contained in the lease was unconscionable and therefore invalid. The Bishop Estate moved for summary judgment against the appellant pursuant to Rule 56, Haw.R.Civ.P. The trial court granted the motion for summary judgment. For the reasons set out below, we reverse.

The condemnation clause in the lease between the Bishop Estate and the appellant stated:

(b) CONDEMNATION. In case at any time or times during the said term the demised premises or any part thereof shall be taken or condemned by any authority having the power of eminent domain, *then and in every such case the estate and interest of Lessee in the premises so taken or condemned shall at once cease and determine, and Lessee shall not by reason of such taking or condemnation be entitled to any claim against Lessors or others for compensation or indemnity for leasehold interest, and all compensation and damages payable for or on account of any land or improvements thereon other than buildings shall be payable to and be the sole property of Lessors, and all compensation and damages payable for or on account of any buildings erected on the demised land shall be payable to and be the sole property of Lessee;* provided, however, that in case only part of said premises shall be so taken or condemned, the rent thereafter payable for the remainder of said term shall be reduced (calculated to the nearest dollar) in the proportion that the area of demised land so taken or condemned bears to the total area hereby demised, and in case the remaining premises shall be unsuitable for residential purposes appropriate for the neighborhood, Lessee shall have the option to surrender

this lease and be relieved of further performance hereunder. (Emphasis added.)

On review of the trial court's judgment on the validity of the condemnation clause, this court must determine if there was any genuine issue of material fact and whether the moving party, the Bishop Estate, was entitled to the judgment as a matter of law. *Namauu v. City & County of Honolulu*, 62 Haw. 358, 359-60, 614 P.2d 943, 944 (1980); *Miller v. First Hawaiian Bank*, 61 Haw. 346, 349, 604 P.2d 39, 41 (1979); *Big Island Small Ranchers Association v. State*, 60 Haw. 228, 234, 588 P.2d 430, 435 (1978); *Graham v. Washington University*, 58 Haw. 370, 373-74, 569 P.2d 896, 899 (1977).

The appellant argues that at trial he raised a genuine issue of fact concerning the validity of the condemnation clause. He contends that, due to a disparity in bargaining power and the fact that the lease was a standard pre-printed form, the condemnation clause was unconscionable and should have been declared invalid by the trial court.

Although many jurisdictions have generally approved of condemnation clauses such as the one in the instant appeal, *see, e.g., United States v. Petty Motor Company*, 327 U.S. 372, 376 (1946); *Evans Prescription Pharmacy, Inc. v. County of Ector*, 535 S.W.2d 704 (Tex.Civ.App. 1976), other courts have allowed lessees of real property to assert the unconscionability of certain provisions against the lessor in actions on the lease. *See Old Town Development Company v. Langford*, 349 N.E.2d 744, 784 (Ind.App. 1976) (exculpatory clause); *Casey v. Lupkes*, 286 N.W.2d 204, 297 (Iowa 1979) (defense of unconscionability allowed against entire farm lease); *Harwood v. Lincoln Square Apartments Section 5*, 78 Misc.2d 1097, 1099, 359 N.Y.S.2d 387, 390 (1974) (disclaimer of liability clause).

Here, the appellant raised a definite question of fact as to whether the condemnation clause in the lease between him and the Bishop Estate was unconscionable. The appellant argued that the lease presented to him by the Bishop Estate was a standard pre-printed form. This may indicate that there was no arms-length bargaining between the two parties. *See*

*generally*, Kessler, *Contracts of Adhesion – Some Thoughts About Freedom of Contract*, 43 COLUM.L.REV. 629, 632 (1943). Also, the appellant contended that he was placed in a "take-it-or-leave-it" position regarding the lease. Because the Bishop Estate owns a substantial portion of the scarce residential land in Hawaii, there could have been a disparity in bargaining position "so that the tenant must either accept what is offered or be deprived of the . . . property." *Old Town Development Company v. Langford, supra* at 784; *Harwood v. Lincoln Square Apartments Section 5, supra* at 1099, 359 N.Y.S.2d at 390.

Bishop Estate cited and the trial court relied upon two cases which are distinguishable from the present case. In *Territory v. Arneson*, 44 Haw. 343 (1960), this court stated that a condemnation clause similar to the one in this appeal was valid. However, that statement was a generalized conclusion and no in-depth analysis of the condemnation clause occurred. In *City & County of Honolulu v. Market Place, Ltd.*, 55 Haw. 226, 517 P.2d 7 (1973), the possible unconscionability of the condemnation clause was not at issue.

We do not go so far as to hold that the condemnation clause in the lease between the Bishop Estate and the appellant is per se unconscionable. As discussed above, the appellant did raise a genuine issue of material fact and therefore the Bishop Estate was not entitled to judgment as a matter of law. Under these circumstances, the trial court must hold a hearing on the issue of unconscionability of the condemnation clause. The hearings must be a "reasonable opportunity to present evidence as to [the clause's] commercial setting, purpose and effect to aid the court in making the determination." U.C.C. § 2-302(2). The test applicable in determining unconscionability is "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." *Id.*, Comment 1; *Earl M. Jorgensen Company v. Mark Construction, Inc.*, 56 Haw. 466, 474-75, 540 P.2d 978, 983-84 (1975). We find the words of

the Court of Appeals for the District of Columbia Circuit, expanding on the test, to be pertinent to the instant case:

> Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction.

*Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445, 449 (D.C. Cir. 1965) (footnote omitted).

This case is remanded for a hearing on the unconscionability of the condemnation clause; further proceedings will depend on the outcome of that hearing.

*Peter A. Lee (Carl Tom* on the briefs, *Oliver & Lee* of counsel) for defendant-appellant.

*Samuel P. King, Jr.,* Deputy Corporation Counsel, for plaintiff-appellee.

*Robert Bruce Graham, Jr., (Hamilton, Gibson, Nickelsen, Rush & Moore* of counsel) for defendants-appellees.