THE NUUANU NEIGHBORHOOD ASSOCIATION, A Hawaii non-profit corporation, DAVID IKEGAMI, JAMES G. Y. HO, MALCOLM ING, JEAN MORI, AND MYRA S. Y. WATT, Plaintiffs-Appellants, *v.* THE DEPARTMENT OF LAND UTILIZATION OF THE CITY AND COUNTY OF HONOLULU, TYRONE KUSAO, Director of Land Utilization, and DOWSETT HIGHLANDS LAND TRUST, Defendants-Appellees

NO. 7756

JUNE 18, 1981

RICHARDSON, C.J., OGATA, LUM, JJ.,
RETIRED JUSTICE MARUMOTO IN PLACE OF
NAKAMURA, J., RECUSED, AND CIRCUIT JUDGE CHANG
IN PLACE OF MENOR, J., EXCUSED

OPINION OF THE COURT BY MARUMOTO, J.

The question for decision in this case is whether 45.783 acres of land in Nuuanu Valley, Honolulu, owned by Dowsett Highlands Land Trust, for which the owner has submitted to the Department of Land Utilization of the City and County of Honolulu an application for subdivision into 58 lots as residential lots in R-3 Residential district established in the Comprehensive Zoning Code of the City and County of Honolulu, are legally zoned for residential use.

In this opinion, Dowsett Highlands Land Trust, Department of Land Utilization of the City and County of Honolulu, Director of the Department, and the land involved in the subdivision application will be referred to respectively as Dowsett, DLU, Director of DLU, and the subject land; and the following brief descriptions will be used to refer to the charters, ordinances and resolutions mentioned and discussed herein:

·(a) 1943 Zoning Resolution: Resolution No. 121 of the City Planning Commission, approved by the Board of Supervisors on October 5, 1943, which created Class AA Residential District No. 9, Dowsett Highlands and Dowsett Tract, Nuuanu;

(b) 1959 Charter: Charter of the City and County of Honolulu, enacted in Session Laws of Hawaii 1959, Act 261, which became effective on July 1, 1959;

(c) 1964 General Plan: General plan enacted in Ordinance No. 2443, pursuant to 1959 Charter, Section 5-512, which became effective on May 7, 1964;

(d) 1968 Development Plan: Development plan enacted in Ordinance No. 3196, pursuant to 1959 Charter, Section 5-512, which became effective on June 6, 1968;

(e) Puunui-Nuuanu-Dowsett DLUM: Detailed land use map for Puunui-Nuuanu-Dowsett area, adopted in Ordinance No. 3197, which became effective on June 6, 1968;

(f) CZC: Comprehensive Zoning Code of the City and County of Honolulu, enacted pursuant to 1959 Charter, Section 5-514, in Ordinance No. 3234, which became effective on January 2, 1969;

(g) 1973 Charter: Revised charter of the City and County of Honolulu, approved by the electorate on November 7, 1972, which became effective on January 2, 1973;

(h) 1977 General Plan: General plan adopted pursuant to 1973 Charter, Section 5-412, in Resolution No. 238, which became effective on February 2, 1977.

Plaintiffs are a Hawaii non-profit corporation comprised of members who are residents and owners of lands adjacent to or in the immediate vicinity, and individual residents and owners of lands adjacent to or in the immediate vicinity, of the subject land.

446

In the amended complaint filed in the First Circuit Court, on October 3, 1979, against DLU, Director of DLU, and Dowsett, as defendants, plaintiffs alleged that they would be adversely affected in their property interests and in the use and enjoyment of their area by the approval of the proposed subdivision, and sought a judgment declaring the proposed subdivision to be in violation of law and enjoining defendants from effectuating the same.

Upon motion for summary judgment filed by plaintiffs, motion for summary judgment filed by Dowsett, and motion to dismiss amended complaint filed by DLU and Director of DLU, the circuit court denied plaintiffs' motion, granted Dowsett's motion and the motion of DLU and Director of DLU, and entered a judgment dismissing the action on the merits.

This case is here on plaintiffs' appeal from that judgment.

In their briefs filed on this appeal, plaintiffs raised numerous issues. However, in the final analysis, there is only one decisive issue in this case.

That issue is the validity of plaintiffs' contention, which has been repeatedly expressed, inferentially if not explicitly, that the subject land is not legally zoned for residential use by its location within R-3 Residential district established in CZC because the land use designation of the subject land on the map in the 1964 General Plan, and in the Puunui-Nuuanu-Dowsett DLUM, which was Preservation, prevailed over the zoning thereof in CZC, which was R-3 Residential.

The issue may be summarily resolved under *City and County of Honolulu v. Midkiff*, 62 Haw. 411, 414, 616 P.2d 213, 216 (1980), in which this court stated:

> It is well-established that, absent special circumstances, an appellate court will decide an appeal on the law as it exists at the time of its decision,

and did not discuss appellants' arguments based on the 1964 General Plan because the adoption of the 1977 General Plan during the pendency of the appeal made it unnecessary to consider the pre-existing plan.

There is no special circumstance in this case which will prevent this court from following *Midkiff*.

*Midkiff* has undermined plaintiffs' position in this case. The 1964 General Plan is not in force at the present time. It has not been in

force since February 2, 1977, when it was repealed in Ordinance No. 77-8, which became effective upon the adoption of the 1977 General Plan.

The amended complaint in this case was filed more than two years after the repeal of the 1964 General Plan.

Plaintiffs have not contended that the 1977 General Plan affects the zoning of the subject land; nor have they advanced similar contention with regard to the 1968 Development Plan. The 1968 Development Plan shows only the location of public facilities, streets, parks and utilities.

Pursuant to 1973 Charter, Section 5-408, the 1977 General Plan sets forth broad policies for long-range development of the City and County of Honolulu, and does not have any land use map attached thereto.

With reference to plaintiffs' arguments based on the Puunui-Nuuanu-Dowsett DLUM, they are irrelevant in the situation where the 1964 General Plan is not in force because, as clarified in Ordinance No. 4517, which was enacted on October 28, 1975, detailed land use maps merely implemented the general plan and did not have any meaningful function separate and apart from the general plan.

Furthermore, the Puunui-Nuuanu-Dowsett DLUM was not a zoning ordinance, nor did it have any effect as a zoning ordinance, because its title did not state that the subject therein was zoning. The title of that ordinance read:

AN ORDINANCE TO ADOPT A DETAILED LAND USE PLAN (BEING ELABORATIONS OF THE LAND USE PATTERN INDICATED ON THE GENERAL PLAN MAP) AS SHOWN ON THE MAP DESIGNATED "1967 GENERAL PLAN DETAILED LAND USE MAP PUUNUI-NUUANU-DOWSETT" AS THE DETAILED LAND USE PLAN FOR THE SAID PUUNUI-NUUANU-DOWSETT AREA; AND TO ADOPT THE MAP DESIGNATED "1967 GENERAL PLAN DETAILED LAND USE MAP PUUNUI-NUUANU-DOWSETT" AS THE DETAILED LAND USE MAP FOR THE SAID PUUNUI-NUUANU-DOWSETT AREA OF HONOLULU, OAHU, HAWAII.

The subject of establishing a new zoning district and converting existing zoned land into such new zoning district was not a subject embraced in its title.

Sketch of portion of Class AA residential district created in 1943 zoning resolution and redesignated R-3 residential district established in CZC, lying east of Pali Highway. North and east boundaries of the district extend along Honolulu watershed and forest reserve boundary line.

Subject land lies within thick solid black line.

1964 General Plan showed subject land as preservation.

Puunui-Nuuanu-Dowsett DLUM delineated subject land as preservation.

The charter provision which was applicable at the time of the enactment of the Puunui-Nuuanu-Dowsett DLUM, being 1959 Charter, Section 3-202.2, provided:

> Every ordinance of the council shall embrace but one subject, which shall be expressed in its title. If an ordinance embraces any subject not expressed in its title, only that subject shall be void.

The clear implication of the second sentence of the quoted charter, which is repeated in 1973 Charter, Section 3-202.2, was that any subject not expressed in the title of an ordinance was void even if it was embraced in an ordinance. In the Puunui-Nuuanu-Dowsett DLUM, the subject of zoning was not only not expressed in its title but was not embraced in the ordinance itself.

Be that as it may, considering the nature of the case, it may be too cavalier to resolve this case solely on the authority of *Midkiff*. Consequently, we will discuss this case on the assumption that the 1964 General Plan was in force. Even on that assumption, the result will be the same.

The subject land was within Class AA Residential District No. 9, Dowsett Highlands and Dowsett Tract, Nuuanu, created in the 1943 Zoning Resolution.

Portion of the area covered in the 1943 Zoning Resolution which lies east of Pali Highway is shown on the sketch reproduced on the opposite page.

After the adoption of the 1959 charter, the 1943 Zoning Resolution was kept in force pursuant to the Transition Schedule in Section 14-109 thereof, which provided:

> All ordinances, resolutions, rules and regulations in force at the time this charter takes effect, and not in conflict or inconsistent with this charter, are hereby continued in force until repealed, amended or superseded by proper authority.

The 1964 General Plan expressly continued the 1943 Zoning Resolution in force by providing in the Preface thereof:

> Such zoning regulations as are currently in force and effect will continue in force and effect until such time as they are superseded by appropriate legislative action consonant with the guides established by the General Plan.

The Puunui-Nuuanu-Dowsett DLUM was not an appropriate legislative action which superseded the 1943 Zoning Resolution.

As explained earlier in this opinion, it had no standing as a zoning ordinance because the subject of establishing a new zoning district was not stated in its title, nor was it embraced in the ordinance itself.

The 1943 Zoning Resolution was superseded by CZC, which established R-3 Residential districts in Section 21-108(c) thereof, and provided in the transition provision in Section 21-1401(b)(3):

AA Residential districts are redesignated as A-3 Residential districts.

CZC is an appropriate legislative action which superseded the 1943 Zoning Resolution. According to its title, it was:

AN ORDINANCE RELATING TO ZONING AND AMENDING CHAPTER 21, R.O. 1961, AS AMENDED; ESTABLISHING ZONING DISTRICTS AND CONVERTING EXISTING ZONED LAND INTO SUCH NEW ZONING DISTRICTS; AND PROVIDING FOR THE REPEAL OF CONFLICTING ORDINANCES.

Thus, the subject of establishing new zoning districts and converting the existing zoned land into such new zoning districts was expressed in the title.

CZC is also consonant with the guides which were expressed in the 1964 General Plan.

The 1964 General Plan specifically stated in its preface that:

(a) the primary purpose of preparing the same was to provide a guide for long-range comprehensive physical development of the community and to coordinate public and private development to promote the general welfare and prosperity of the people;

(b) it should be a broad flexible design intended to guide the direction and future development in a coordinated and rational manner;

(c) to accomplish that objective, its textual portion was couched in broad, comprehensive language and the accompanying map showed desirable land use relationships and interrelationships within generalized locations rather than specific uses within defined legal boundaries; and

(d) it was not a zoning plan, nor was it intended to be a substitute for one.

In its discussion of residential developments, it stated that one of its objectives was:

to provide a better environment within which people may live by establishing and maintaining standards to insure the highest quality in such developments,

and set forth considerations to attain the objective, among which were:

(a) that physical aspects such as natural topographic conditions should be properly related to reasonable densities and economic capabilities;

(b) that residential areas should be located convenient to employment centers, shopping and other community facilities as education, recreation and cultural facilities, be in close proximity to transit and major thoroughfares to provide efficient accessibility, and be protected from incompatible uses by adequate buffer zones, and

(c) that good design and high standards of site and building construction with ample open space and privacy should be promoted in the most economic manner.

In including the subject land within R-3 Residential district established thereunder, CZC has met the considerations mentioned above.

The subject land is located convenient to employment centers and shopping and other facilities, and is in close proximity to major thoroughfare. It is adjacent to existing residential areas and its zoning for residential purpose is not spot zoning and requires no buffer zone.

Considerations (a) and (c) mentioned above have been met in the inclusion of the pre-existing Class AA Residential districts in R-3 Residential districts because the redesignation of the former Class AA Residential districts as R-3 Residential districts has not been simply a change in nomenclature.

For instance, the pre-existing Class AA Residential districts required a minimum lot area of 10,000 square feet for each dwelling. In R-3 Residential districts established in CZC, among other requirements, the minimum lot area requirement of 10,000 square feet applies only to lots where the cross slope is 30 percent or less; one-half acre where the cross slope is more than 30 percent but is 35

percent or less; one acre where the cross slope is more than 35 percent but is 40 percent or less; and two acres where the cross slope is more than 40 percent. Additionally, in R-3 Residential districts, maximum lot coverage of all buildings and structures is limited to 50 percent.

Also, it may be noted that, according to the tax map of the First Taxation Division of the State of Hawaii, Tax Map Key 2-2-4: Parcel 1, which is the parcel lying between the east boundary of the subject land and the Honolulu Watershed and Forest Reserve Boundary, shown in the sketch on page 448, originally included in Class AA Residential District No. 9 established in the 1943 Zoning Resolution, is presently owned by the State of Hawaii, having been acquired pursuant to Session Laws of Hawaii 1949, Act 274.

This court will take judicial notice of the information on the offical tax map as information capable of certain verification. McCormick on Evidence, Second Edition, Section 330 (1972).

Session Laws of Hawaii 1949, Act 274, provided for acquisition of lands by the Territorial Board of Agriculture and Forestry for conservation, development, and protection of water resources, and prohibited the use of the lands so acquired for uses other than for forest reserve purposes and purposes directly connected with water supply development.

The proposed subdivision in this case is a logical extension of the existing R-3 Residential development along the west boundary of the subject land, and will not provide a wedge for private residential development of the land along its east boundary.

We answer the question posed at the outset of this opinion in the affirmative, and affirm the judgment.

*E. Cooper Brown (Boyce R. Brown, Jr.* and *Mary Blaine Durant* with him on the briefs; *Brown* and *Bettencourt* of counsel) for plaintiffs-appellants.

*Winston K. Q. Wong,* Deputy Corporation Counsel, for defendants-appellees Department of Land Utilization and Tyrone Kusao, Director of Land Utilization.

*Paul Devens (Francis I. Yamashita* with him on the brief; *Ikazaki, Devens, Lo, Youth & Nakano* of counsel) for defendant-appellee Dowsett Highlands Land Trust.