[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANT RICHARD D. STAPLETON'S MOTION FOR SUMMARY JUDGMENT (No. 120)
The motion for summary judgment now before the court presents a legal question concerning the extent of a lawyer's continuing duty to make disclosures to a former client.
The evidence submitted by the parties establishes the following facts. Coral Moore and Wilbur Moore, both now deceased, had three children: the plaintiff. Gail Moore Standish; the codefendant, Gary C. Moore; and Wilbur John Moore. (To avoid confusion, the Moores will be referred to by their first names.) Coral and Wilbur owned some valuable assets, and this case proves yet again that the combination of money and family is not as invariably happy as some people like to think it is. The other co-defendant, Richard Stapleton, is an attorney who has at one time or another represented the various members of the Moore family and has now been drawn into what is in essence a family feud.
The documentary portion of this saga begins on December 4, 1978, when Coral executed a Trust Agreement drafted and notarized by Stapleton. CT Page 13803 Coral and Wilbur were the co-trustees. Stapleton was designated as successor co-trustee in the event that either original co-trustee should fail or cease to act. The property of the trust consisted of numerous securities. The net income of the trust property was to be paid to Coral during her life. On her death (if, as was to occur, that death occurred after her husband's death and after 1988), the property was to be divided into three equal shares to be paid to the three children.
Coral and Gail each owned a one-half interest in a house and lot located at 10 Island View Avenue in Branford. Coral's one-half interest in that property is the cynosure of this case. The evidence establishes that Coral did not put her one-half interest in the trust described above. Rather, she decided to make it the subject of a specific bequest in her will. On November 1, 1988, Coral executed a will bequeathing her one-half interest to Gail "subject, however, to the life use of my husband, Wilbur J. Moore."
On May 23, 1992, Coral opened an equity line of credit on her one-half interest in the Branford property. Stapleton represented Coral in opening this line. Because Gail owned the other one-half interest, her signature was also required on the line of credit documents. Stapleton concedes that he represented Gail in the closing as well.
Coral's husband, Wilbur, died in April 1993.
On May 23, 1993, Coral executed a new will, drafted by Stapleton, that is the subject of much dispute in this case. The 1993 will revokes all previous wills. Article Two of the will provides, "I give and devise to my daughter, GAIL MOORE STANDISH, my one-half interest in the house and lot at #10 Island View Avenue in the Pine Orchard section of Branford, Connecticut, subject, however, to any mortgages or home equity loans which may be liens against the property at the time of my death."
Coral died on July 25, 1995. Between 1992 and her death, she borrowed approximately $140,000 on the equity line of credit. Under the terms of the 1993 will, Gail's bequest was subject to that encumbrance.
On July 15, 1996, the Branford Probate Court admitted Coral's 1993 will to probate. The court (Donegan, J.) rejected Gail's claim that the will was a product of the exercise of undue influence upon Coral by Gary and Stapleton.
On November 29, 1996, Gail commenced the present ease by service of process. She is the sole plaintiff. Stapleton and Gary are the defendants. Her Second Revised Complaint consists of twelve counts. The Ninth through Twelfth counts are directed against Gary and are not CT Page 13804 relevant to the motion now before the court. The First through Eighth counts are directed against Stapleton and must now be addressed.
The First Count alleges negligence. It contends that Stapleton was negligent in failing to advise Gail "of the effect of co-signing the mortgage which created the equity line of credit"; in failing to advise Gail of an asserted conflict of interest in representing both Coral and Gail in creating the line of credit; in failing to obtain Gail's "personal consent" before representing her in that matter; in failing to advise Gail that "as Trustee of the Coral Moore Trust, he was utilizing the equity line of credit for Coral Moore's support" rather than using the trust assets for that purpose; in failing to engage independent counsel "at a time when his continued representation of all parties was creating a conflict of interest"; and in failing to warn Gail of his asserted conflict of interest in creating the equity line of credit "and then changing the Will of the co-owner."
The Second Count alleges breach of contract. It alleges that on May 23, 1992, Stapleton "entered a contract to provide legal advice" to Gail concerning the equity line of credit. Stapleton allegedly breached that contract in the ways specified in the First Count.
The Third Count alleges breach of fiduciary relationship. It alleges that Stapleton "had a fiduciary relationship with the plaintiff, both as Trustee of the Coral Moore Trust and as her personal attorney" in the 1992 transaction. It further alleges that Stapleton breached that fiduciary relationship in drafting the 1993 will; in permitting, in his capacity as Trustee of the Coral Moore Trust, "the use of the equity credit line to support Coral Moore"; in failing to file an accounting of the trust until after Coral's death; and in permitting "the use of a Power of Attorney by Gary Moore" to draw on the equity credit line.
The Fourth Count alleges conversion. It alleges that Stapleton "utilized the funds" from the equity line of credit "and in so doing converted the equity in the property owned by Gail Standish to their [sic] own benefit."
The Fifth Count alleges fraud. It specifically alleges that when Gail signed the 1992 documents, Stapleton "assured the plaintiff that there would not be a fiscal impact upon her." Stapleton's "material omissions" allegedly consist of failing to tell Gail of the 1993 will and of Coral's use of the equity line of credit.
The Sixth Count alleges intentional infliction of emotional distress based on the factual allegations of the First Count. CT Page 13805
The Seventh Count alleges negligent infliction of emotional distress. It claims that Stapleton "negligently and carelessly caused emotional harm to the plaintiff' in failing to inform the plaintiff that he was incurring substantial liabilities on her property"; in failing to inform her of the 1993 will; in failing to warn her "of the effects of the actions he was taking concerning Coral"; and in failing "to take any action which would allow [Gail] to protect herself from the effects of their [sic] actions."
The Eighth Count alleges conspiracy. It claims that Stapleton conspired with Gary to enrich Gary by using the equity line of credit to support Coral.
On July 7, 2000, Stapleton filed the motion for summary judgment now before the court. The motion seeks judgment on the First through Eighth Counts of the Second Revised Complaint. The motion rests on two principal grounds. First, the motion contends that several of Gail's claims are barred by the applicable statute of limitations. Second, the motion argues that any unbarred claim lacks an evidentiary foundation. The notion was heard on October 23, 2000. Postargument submissions were completed on November 6, 2000.
It is common ground that, whatever the precise statute of limitations cited, the applicable limitations period is three years. See Conn. Gen. Stat. § 52-577 ("[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of"); Conn. Gen. Stat. § 52-581(a) ("[n]o action founded upon any express contract or agreement which is not reduced to writing, or of which some note or memorandum is not made in writing and signed by the party to be charged therewith or his agent, shall be brought but within three years after the right of action accrues"); Conn. Gen. Stat. § 52-584 ("[n]o action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . may be brought more than three years from the date of the act or omission complained of. . . ."). As mentioned, this case was commenced by service of process on November 29, 1996. Consequently, any act or omission occurring prior to November 29, 1993, is time barred. This means, inter alia, that any claim of malfeasance or nonfeasance occurring at the creations of the 1992 equity line of credit and the May 23, 1993 will is time barred.
While this observation is sufficient to dispose of numerous specifications alleged in connection with the various counts, it is insufficient to fully dispose of any count in its entirety. Each of the first eight counts incorporates one or more allegations that Stapleton failed to warn or inform Gail of the 1993 will and the ongoing use of the CT Page 13806 equity line of credit. This use (and, consequently, the alleged failure to warn) continued well after November 29, 1993. (As mentioned, Coral died on July 25, 1995.) For this reason, it is necessary to determine whether any of Gail's allegations of continuing nonfeasance have sufficient evidentiary support and an appropriate legal basis to survive Stapleton's motion for summary judgment.
Stapleton has submitted detailed affidavits in which he states that, after the creation of the equity line of credit in 1992, he neither utilized the equity line of credit himself nor assisted either Coral or Gary in utilizing it. He never represented Gail in any matter after the 1992 transaction. He did not conspire, discuss, or act with Gary concerning the decision to use the equity line of credit rather than trust funds to support Coral. Any failure to file an accounting for the trust "was due to delay and uncertainty surrounding the probating of the estate of Wilbur Moore."
Gail has submitted very little in response to Stapleton's affidavit. Her own affidavit states that, "I considered Defendant Richard D. Stapleton to be my attorney during various events and transactions alleged in my Second Revised Complaint." The facts on which this belief is based are not specified. Gail has additionally submitted a deposition of Stapleton in which he testified that he knew that some $30,000 to $40,000 was paid to Coral from the trust between the time of Wilbur's death and the time of Coral's death, and that, during this same time the equity line of credit went from $60,000 to $140,000. He was aware of approximately $30,000 of checks drawn by Gary, pursuant to a power of attorney, on the equity line of credit. He was also aware of the provisions of Coral's 1993 will, having drafted that document.
Under these circumstances, notwithstanding the clouds of accusations that fill the Second Revised Complaint, the resolution of this case comes down to a straightforward question of law. In the period following November 29, 1993, did Stapleton have any duty to Gail to inform her of either Coral's 1993 will or Coral and Gary's use of the equity line of credit? The question of whether such a duty in fact existed is a legal question that must be answered by the Court.
Gail identifies two sources of the legal duty that she claims: the 1978 trust and the 1992 creation of the equity line of credit. These asserted sources must now be considered in turn.
The first basis of Stapleton's asserted duty is his position as trustee of the 1978 trust. The evidence makes it clear beyond dispute that the Branford property in question was not a trust asset. Under these circumstances, Stapleton, in his capacity as trustee, had no duty to make CT Page 13807 any disclosure to Gail about either the 1993 will provision concerning that property or the post-creation use of the equity line of credit on that property.
No provision of the trust requires the disclosures that Gail now asserts should have been made. Beyond the provisions of the trust itself, there is no doubt that a trustee owes the trust beneficiaries a common law duty of "complete loyalty." Hall v. Schoenwetter, 239 Conn. 553,559, 686 A.2d 980 (1996). (Internal quotation marks and citations omitted.) But the "complete loyalty" involved is a duty with respect to the assets of the trust. Thus, the Second Restatement provides that, "The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary." RESTATEMENT (SECOND) OF TRUSTS § 170(1) (1959). (Emphasis added.) Similarly, a trustee "is under a duty to the beneficiary to give him at his request at reasonable times complete and accurate information as to the nature and amount of the trust property." Id. § 173. Here, however, there is no suggestion that Gail at any time made any such request," and the property in question was not "trust property" to begin with.
Miller v. First Hawaiian Bank, 604 P.2d 39 (Hawaii 1979), illustrates the boundaries of a trustee's duty of loyalty. Miller involved a property subject to a lease. The underlying fee interest was an asset of a trust; the leasehold interest was not. The beneficiary of the trust was interested in purchasing the leasehold, but the trustee sold it without informing the beneficiary of the sale. The Supreme Court of Hawaii held that the trustee had no duty of notification. It explained that the duty of a trustee to provide information to a beneficiary "arises only when such facts affect the beneficiary's interest in the trust property." Id.
at 42. Here, since no trust property was sold, "the duty to inform never arose." Id.
Insofar as Stapleton, wearing his trustee hat, had a duty to disclose information to Gail, that duty existed only with respect to trust property. He had no duty, wearing this hat, to make any disclosure with respect to nontrust property, such as the Branford property.
Gail makes a somewhat different notification claim with respect to the property actually in the trust. She claims that Stapleton failed to inform her, by either an accounting or other disclosure, that the trust property was not being used to support Coral. This contention, however, is answered by a specific provision of the trust itself. Article Eighth of the trust provides that, "The Trustee must render an annual account to the Grantor during her life and after the Grantor's death to. all the income beneficiaries and presumptive remaindermen thereof" Coral was the Grantor of the trust. All of the events (or nonevents) of which Gail CT Page 13808 complains occurred during Coral's life. Stapleton had no duty under the express terms of the trust to render an accounting to Gail during this period of time.
Beyond this textual consideration, Gail's argument concerning Stapleton's asserted duty to provide her with the trust information at issue here cannot be reconciled with the underlying policies of trust law. "Ordinarily, the trustee is not under a duty to the beneficiary to furnish information to [her] in the absence of a request for such information." RESTATEMENT (SECOND) OF TRUSTS, supra, § 173 cmt. d. As mentioned, there was no such request here. In the absence of a request, where there is no dealing on the trustee's own account, a trustee's only duty is "to communicate to the beneficiary facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for [her] protection in dealing with a third person with respect to [her] interest." Id. An example of this latter duty occurs, for example, when a beneficiary is about to sell her interest under the trust to a third person. Id. Nothing like that scenario is presented here. Stapleton had no duty, as trustee, to make the disclosures at issue here.
In any event, the fundamental purpose of disclosure is to avoid wasting of the trust assets and self-dealing by the trustee. Nothing like that occurred here. No trust assets were wasted, and no self-dealing by the trustee occurred. Ironically, the gravamen of Gail's complaint is that trust assets were preserved and were not used instead of non-trust assets for Coral's support. This is a very peculiar complaint for a beneficiary to make against a trustee. Insofar as he preserved the trust assets, Stapleton was fulfilling, rather than violating, his duty as trustee. In her capacity as beneficiary of the trust, Gail had nothing to gain by an expenditure of trust assets. Under the circumstances, there is no evidence that Stapleton violated any duty he may have owed to Gail in his capacity as trustee.
The other asserted basis of Stapleton's duty is his. role as Gail's attorney in the creation of the equity credit line in 1992. That role, however, gave him no professional obligation to make the disclosures that Gail claims he should have made after November 1993. "[O]nce the representation of the client is complete and the document executed," an attorney typically has no duty to provide further information to a client. Sanborn v. Greenwald, 39 Conn. App. 289, 297, 664 A.2d 803,cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995). No retainer agreement requiring such future duties has been introduced into evidence. Under these circumstances, Stapleton's asserted duty of further communication was quite limited. CT Page 13809
The professional duty to communicate is governed by Rule 1.4 of the Rules of Professional Conduct. Rule 1.4(a) provides that, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." As mentioned, there was no "request" for information here, reasonable or otherwise. Stapleton's duty was consequently limited to keeping Gail "reasonably informed" about the status of the "matter." The "matter" that was the object of the representation here was the creation of the equity line of credit. Once the line of credit was created, there was nothing with respect to that "matter" about which to keep Gail reasonably informed.
A purposive analysis of Rule 1.4 leads to a similar conclusion. The purpose of the duty of communication is to provide the client with "sufficient information to participate intelligently in decisions concerning the objectives of the representation." Rule 1.4 Commentary. The objective of the representation here was the creation of the line of credit. The communications that Gail now claims should have been made would not have assisted her in achieving that objective. The objective was fully achieved when the line of credit was successfully created.
Gail's submissions pointedly ignore a question crucial to the purposive analysis just described. What exactly could she have done to furtheranything had she known of the 1993 will or the use of the equity line of credit? A beneficiary is allowed to sue a lawyer for the negligent preparation of a will on the ground that such negligence "thwart[s] the wishes of the testatrix." Stowe v. Smith, 184 Conn. 194, 198, 441 A.2d 81
(1981). Here, however, the evidence establishes that the wishes of the testatrix were not thwarted but fulfilled. (Gail failed to prove her undue influence claim in Probate Court and has not chosen to resurrect that claim here.) Gail provides no hint of any legal recourse that she would have had if she had obtained full knowledge of the events in question during Coral's lifetime. In fact, she would have had no legal recourse. A beneficiary has no right to alter a provision in a will executed by a competent testatrix. For that matter, the beneficiary of a will has no right to anything under the will while the testatrix is alive. The testatrix could amend her will at a moment's notice and cut the beneficiary off without a cent. Alternatively, in the case of a specific bequest of property, like the Branford property at issue here, the testatrix could adeem the legacy by conveying the property to an altogether different person during her lifetime. Simmons v. McKone,158 Conn. 71, 73, 255 A.2d 822 (1969). Gail could have done nothing to stop any of this. Under these circumstances, any argument that the objectives of Stapleton's representation of her would have been furthered in any way by the disclosures she claims should have been made would be deeply unpersuasive. CT Page 13810
Stapleton not only had no affirmative duty to make the disclosures that Gail now claims should have been made. He had an distinct ethical duty to Coral not to make such disclosures. Any knowledge that Stapleton had of the 1993 will and the use of the equity line of credit was acquired in his capacity as Coral's attorney. Stapleton states in his affidavit that Coral at no time authorized him to make any such disclosures. Gail does not contend otherwise. Although Gail argues that this is evidence that Stapleton had a conflict of interest, there was, in fact, no such conflict because Stapleton had no affirmative duty to make such disclosures to Gail in the first place. The law recognizes that "a lawyer's duty of confidentiality to another client may prohibit some disclosures." RESTATEMENT OF THE LAW GOVERNING LAWYERS § 16 cmt. e (2000). Lawyers are not required to "violate a duty of nondisclosure owed to a third party." Sage Realty Corp. v. Proskauer Rose Goetz MendelsohnL.L.P., 689 N.E.2d 879, 883 (N.Y. 1997).
For the reasons discussed above, Stapleton had no duty, in either his trustee or attorney capacities, to make the disclosures that Gail claims he should have made after November 29, 1993. In the absence of such a duty, there is no continuing course of conduct of which Gail may legally complain in order to avoid the running of the statute of limitations.
The motion for summary judgment is granted.
Jon C. Blue Judge of the Superior Court