TECHNICOLOR, INC., Plaintiff-Appellee, *v*. VINCENT T. TRAEGER, Defendant-Appellant

NO. 5692

JUNE 17, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This litigation arises out of an employment agreement between Technicolor, Inc., and Vincent T. Traeger, a former employee of that firm. Technicolor, Inc., sued Mr. Traeger to enjoin him from continuing in the employment of a competing business in breach of a postemployment restrictive covenant in the employment agreement. Mr. Traeger counterclaimed for damages, setting forth four counts based upon Technicolor, Inc.'s alleged violation of Hawaii antitrust laws (Counts I and II), breach of contract (Count III), and interference of a contractual relationship (Count IV). Both parties moved for summary judgment as to each other's action. The trial court issued an order which denied Mr. Traeger's motion and granted Technicolor, Inc.'s motion as to Counts I, II and IV. Count III[1] is set for trial.

This is an interlocutory appeal by Mr. Traeger (appellant) from the portion of the order that granted Technicolor, Inc.'s (appellee) motion on the abovementioned counts. At issue in this case is the propriety of the trial court's award. For reasons stated below, we affirm the trial court's grant of summary judgment.

STATEMENT OF THE CASE

Appellant worked for appellee, a photo-finishing-services business, from August 1962 to January 1971 in various mana-

---

[1] Count III in essence alleges that appellee breached the employment agreement by failing to meet its obligations without justification or excuse; i.e. appellee allegedly terminated appellant's employment short of the expiration of the employment agreement, without just cause, and thereby caused appellant to suffer damages in spite of his efforts to mitigate such harm.

gerial capacities. His last two positions were that of general manager of appellee's Hawaii operation (January 1963 to October 1969) and of regional vice-president of appellee's operations throughout the states of Hawaii and Washington (October 1969 to January 1971). In these last two capacities, appellant became involved in a certain amount of customer contact and customer entertainment. He also became privy to appellee's customers list and to certain pricing information which appellee considered confidential. Whether appellant had access to any trade secrets is not clear.

When appellant was promoted to general manager of the Hawaii operation, he entered into an employment agreement with appellee. Although he had been working for appellee for approximately five months prior to this promotion, appellant was not previously asked to enter such an agreement. Appellant alleges that the agreement was totally appellee's idea and was drafted in whole by appellee. Appellant further states that while he had no objections to the contract at the time, he had only signed it because he felt that it was a requirement for the job.

The crucial clause in the employment agreement in effect · prohibited appellant from competing with appellee, or associating with any of appellee's competitors in Hawaii, for the term of the agreement and for three years thereafter.[2] The term of the agreement was extended several times by amendments with the final extension running to December 31, 1972.

---

[2] The restrictive covenant reads:

(6) During the term of this Agreement and for a period of three (3) years following its termination, whether at the expiration of the stated term thereof or prior thereto, and whether such termination be caused by Employee or by Technicolor, Employee shall not, alone or as a member, employee or agent of any partnership or as an officer, agent, employee, director, stockholder (except of not more than 10% of the outstanding stock of any company listed on a national securities exchange), or investor of any other corporation, directly or indirectly, own, manage, operate, join, control or participate in the ownership, management, operation or control of, or work for or permit the use of his name by, or be connected in any manner with any business or activity in the State of Hawaii which is competitive with Tech Hawaii's business as conducted on the date of the termination of this Agreement, whether such business or activities are conducted during such three year period by Technicolor or a Subsidiary.

On January 11, 1971, however, almost two years before the employment agreement was scheduled to end, appellant signed a letter requesting that the agreement be terminated as of that date. The letter also states that in consideration for the early release, appellant agreed not to compete with appellee, or associate with any competitor of appellee's for three years hence in either Hawaii or Washington. Appellant claims that he did not resign voluntarily but did so under threat of criminal prosecution by appellee. Appellee denies using any duress or intimidation to get appellant to sign the termination letter.

Shortly after termination of his job, appellant made futile attempts to secure the job of president of the Hawaii Visitors Bureau. He remained unemployed until mid-July of 1971 when he accepted a position with a photo-finishing business in California. His salary was substantially lower than what he received from appellee and he had to live away from his family because they remained here in Hawaii, for reasons unexplained.

In May of 1972, appellant quit the California job and returned to Hawaii because he felt that it was "too much of a hassle living away from the family" and that the job did not offer him the security he desired.

In June of 1972, which was within the three-year period of restriction, appellant started working as general manager of a photo-finishing-service firm which competed with appellee in Hawaii. The salary he received was even less than that paid by the California firm but he claims that he was given, or was about to be given a stock option plan, which if firmed up, would give him the opportunity to acquire control of the company. This employment relationship, which was reduced to a written agreement, and the stock option plan, which was not, are the bases of the "contractual relationship" with which appellee allegedly interfered (Count IV).

It was at this time (June 30, 1972) that appellee filed the original action to enjoin appellant from continuing with the competing business.

Appellant counterclaimed for damages setting forth four

counts. The three counts which we are concerned with on this appeal are, in summary:

*Count I.* The restrictive covenant in the employment agreement violates HRS § 480-4[3] in that it unreasonably restrains trade and commerce in the film-processing business in Hawaii. Thus, appellant is entitled to treble damages under HRS § 480-13.[4]

*Count II.* The restrictive covenant violates HRS § 480-2[5] because it unreasonably restrains trade in the

---

[3] HRS § 480-4 in relevant parts reads:

§480-4 Combinations in restraint of trade, price-fixing and limitation of production prohibited. (a) Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in the State, or in any section of this State is illegal.

(b) Without limiting the generality of the foregoing no person, exclusive of members of a single business entity consisting of a sole proprietorship, partnership, trust, or corporation, shall agree, combine, or conspire with any other person or persons, or enter into, become a member of, or participate in, any understanding, arrangement, pool, or trust, to do, directly or indirectly, any of the following acts, in the State or any section of the State:

(1) Fix, control, or maintain, the price of any commodity;

(2) Limit, control, or discontinue, the production, manufacture, or sale of any commodity for the purpose or with the result of fixing, controlling or maintaining its price;

(3) Fix, control, or maintain, any standard of quality of any commodity for the purpose or with the result of fixing, controlling, or maintaining its price;

(4) Refuse to deal with any other person or persons for the purpose of effecting any of the acts described in (1) to (3) of this subsection.

[4] HRS § 480-13 reads:

§480-13 Suits by persons injured; amount of recovery, injunctions. (a) Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter:

(1) May sue for damages sustained by him, and, if the judgment is for the plaintiff, he shall be awarded threefold damages by him sustained and reasonable attorneys fees together with the costs of suit; and

(2) May bring proceedings to enjoin the unlawful practices, and if the decree is for the plaintiff, he shall be awarded reasonable attorneys fees together with the cost of suit.

(b) The remedies provided in this section are cumulative and may be sought in one action.

[5] HRS § 480-2 reads:

§480-2 Unfair competition, practices, declared unlawful. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.

film-processing business in Hawaii. Thus, appellant is entitled to treble damages under HRS § 480-13.

*Count IV*. Appellee interfered with a contractual relationship between appellant and the competing firm he worked for, and so appellant is entitled to damages.

After discovery, which proved to be quite frustrating for appellant, because of appellee's refusal to respond to the bulk of his requests, both parties filed Motions for Summary Judgment as to each other's action. The trial court issued an order denying appellant's motion and granting appellee's as to the three above-summarized counts.

A summary of appellant's arguments is as follows:

I. Summary Judgment is rarely a proper procedure in a complex restraint of trade case.

II. The Summary Judgment dismissing appellant's counterclaim was improper, in that the lower court was presented with disputed issues of relevant and material fact.

 A. The relevant sections of the Hawaii Antitrust law are controlling and dispositive.

 B. Under general law of restraints of trade, factual questions were presented to the trial court which precluded disposition by summary judgment.

III. Appellee's continued obstruction and refusal to conduct discovery clearly indicates that there are disputed issues of fact.

OPINION

On review of a summary judgment proceeding, the standard to be applied by this court is identical to that employed by the trial court. WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 2716. This means that ". . . the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion." *Gum v. Nakamura*, 57 Haw. 39, 549 P.2d 471 (1976); *Aku v. Lewis*, 52 Haw.

366, 477 P.2d 162 (1970); *Abraham v. Onorato Garages,* 50 Haw. 628, 446 P.2d 821 (1968). Further, in considering the validity of the granting of summary judgment under H.R.C.P. Rule 56(c), the appellate court must determine whether any genuine issue as to a material fact was raised and, if not raised, whether the moving party was entitled to judgment as a matter of law. *Abraham v. Onorato Garages, supra.*

### I. GENUINE ISSUE AS TO A MATERIAL FACT

Appellant's contention that "summary judgment is rarely a proper procedure in a complex restraint of trade case" is inapplicable here. While such a rule is appropriate to ". . . complex antitrust litigation, where motive and intent play leading roles . . .", *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473 (1962), motive and intent are not in issue in this case.

Appellant also argues that factual questions were presented to the trial court which precluded disposition by summary judgment. Specifically, appellant insists that there were questions of fact as to: the reasonableness of the covenant, the undue hardship imposed upon appellant, the justification for imposing the covenant by appellee, the existence of consideration for the contract and the justification for terminating appellant's employment.

We are of the opinion the first three questions listed involve legal determinations, that are to be made by the court, when it makes its "reasonableness analysis", and not by a trier of fact. This is further amplified in the second (II) portion of our opinion.

As to the remaining two questions, we conclude that they do not relate to any material fact as far as Counts I, II and IV are concerned. The "lack of consideration" contention, for example, is not only without evidentiary basis but is also contradictory to appellant's position on Count III. Appellant had received a substantial salary increase when he was promoted to the general manager's position and continued receiving a substantial salary until his employment terminated.

In a similar postemployment-restriction case, the Court of Appeals of Tennessee held as a matter of law that employment in itself is sufficient consideration to support such a contract. *Ramsey v. Mutual Supply Co.*, 58 Tenn. App. 164, 427 S.W.2d 849 (1968). In the case at hand, appellant was not only employed but was also paid a salary substantially above what his other employers were willing to pay him for filling similar positions but without such a postemployment restriction.

We conclude that there was no question of lack of consideration.

As to the "justification for termination" question, we fail to see how it relates to any count save Count III, which is not in issue on this appeal.

Finally, appellant argues that "[a]ppellee's continued obstruction and refusal to conduct discovery in this case clearly indicates that there are disputed issues of material fact." No authority was cited by appellant on this speculative argument.

Furthermore, appellant did not raise this matter before the trial court and we see no valid reason to consider it on this appeal. In any event, we do not see anything in the record to indicate that appellee's behavior was improper. Moreover, how a party's failure to conduct discovery has any relevance to whether or not there are disputed issues of material fact escapes us.

We, therefore, conclude that there was no genuine issue as to a material fact.

## II. QUESTION OF LAW

Appellant's main argument is that through the enactment of HRS § 480-4(c)(4),[6] the State Legislature has pre-empted

---

[6] HRS § 480-4(c)(4) reads:

(c) Notwithstanding the foregoing subsection (b) and without limiting the application of the foregoing subsection (a) it shall be lawful for a person to enter into any of the following restrictive covenants or agreements ancillary to a legitimate purpose not violative of this chapter, unless the effect thereof may be

the field of allowable types of employment restraints in Hawaii. Thus, he maintains, unless the restrictive covenant in question fits into the HRS § 480-4(c)(4) exclusion, it is in essence a *per se* violation of chapter 480; accordingly, the only questions for resolve were ones for the trier of fact, principally, whether or not appellant had access to any trade secrets while working for appellee. We disagree.

A careful reading of the legislative history of HRS § 480-4(c) and an examination of federal case law reveal the fallacy of appellant's approach. The conference committee report on § 480-4(c) reads in part:

> [I]t is understood that the listing of ancillary restrictive covenants *and agreements which are similar in type and nature* and related to the lawful purposes of another agreement or transaction *may be excluded by the courts* from the application of the "per se" violations listed in subsection (2) [sec. 480-4(b)] and from the application of subsection (1) [sec. 480-4(a)] of this section *if such is the interpretation given* by the federal courts in *construing Section 1 of the Sherman Act*. Conference Committee Report No. 16, 1961 Hawaii House Journal 1067-68. (Emphasis added.)

Our understanding of the above committee report is that the restrictive covenants and agreements enumerated under § 480-4(c) were not meant to be exclusive in their respective fields. Instead, the drafters evidently intended to have courts analyze all restrictive covenants that are not listed as "per se violations", and determine their validity in much the

---

substantially to lessen competition or to tend to create a monopoly in any line of commerce in any section of the State:

. . . .

(4) A covenant or agreement by an employee or agent not to use the trade secrets of the employer or principal in competition with his employer or principal, during the term of the agency or thereafter, or after the termination of employment, within such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent.

same way that federal courts would, in Section 1[7] Sherman Act cases, analyze such covenants.

Research of federal case law shows that in Section 1 cases federal courts have uniformly applied a "rule of reason" test to determine the validity of restrictive covenants that are not classified as "per se violations". *See e.g. Standard Oil Company of New Jersey v. United States*, 221 U.S. 1 (1911); *Bradford v. New York Times Company*, 501 F.2d 51 (2d Cir. 1974). Under this test, a covenant is valid only if the court deems it to be "reasonable". *Josten's, Inc. v. Cuquet*, 383 F.Supp. 295 (E.D. Mo. 1974). Generally, courts will find a restrictive covenant "not reasonable", and therefore invalid, if:

> (i) it is greater than required for the protection of the person for whose benefit it is imposed; (ii) it imposes undue hardship on the person restricted; or (iii) its benefit to the covenantee is outweighed by injury to the public. . . . Goldschmid, *Antitrust's Neglected Stepchild: A Proposal For Dealing With Restrictive Covenants Under Federal Law*, 73 COLUM. L. REV. 1193, 1196 (1973).

This "reasonableness analysis" is done by the court, as a matter of law, and not as appellant contends, by a jury, as a matter of fact. *Palmer v. Chamberlin*, 191 F.2d 532 (5th Cir. 1951); *Kutash v. Gluckman*, 193 Ga. 805 (1942), 20 S.E.2d 128 (1942). *See also Alders v. AFA Corporation of Florida*, 353 F.Supp. 654 (S.D. Fla. 1973); *but see Winn Avenue Warehouse, Inc. v. Winchester Tobacco Warehouse Co., Inc.*, 339 F.2d 277 (6th Cir. 1964). In making this analysis, the court must examine such factors as geographical scope, length of time, and breadth of the restriction placed on a given activity. Goldschmid, *Antitrust's Neglected Stepchild, supra*. In the instant case there is ample evidence as to these factors and other facts necessary for the court to have made its

---

[7] 15 U.S.C. § 1 (1970), provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: . . . .

"reasonableness analysis". And viewing this evidence in the light most favorable to appellant, we hold that the trial court was correct in deciding, as a matter of law, that the covenant in question was an allowable one under § 480-4(c) and therefore not in violation thereof. We further agree with the trial court that, as a matter of law, the restrictive covenant does not violate HRS § 480-2. The question of appellant's access to trade secrets which appellant considered the principal issue as to a material fact, then, need not have been reached by the trial court. *See e.g. Nelligan v. Ford Motor Co.*, 161 F. Supp. 738 (W.D.S.C. 1958). It then follows that if the covenant were valid, appellee's action to enjoin appellant from breaching it was within its (appellee's) legal right. Count IV, then, was also properly dismissed as a matter of law.

Although we have chosen to consider the points raised by appellant, we do not intend to imply thereby whether or under what circumstances one party to an agreement in restraint of trade may recover damages from the other party for the restraint imposed upon him by the agreement.

*David Bettencourt (Mattoch, Kemper & Brown)* for defendant-appellant.

*Philip J. Leas (William M. Swope* with him on the brief, *Cades, Schutte, Fleming & Wright* of counsel) for plaintiff-appellee.