MAURICE LEE SILVER, Plaintiff-Appellant, *v.* PETER T. GEORGE, WILLIAM H. KRUTZER, III, ROBERT J. SMOLENSKI, individually, and as officers and agents of Pace Corporation, PACE CORPORATION, and TORKILDSON, KATZ & CONAHAN, a Law Corporation, Defendants-Appellees

NO. 6620

(CIVIL NO. 45361)

MAY 13, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ.,
AND RETIRED JUSTICES OGATA AND MENOR
ASSIGNED BY REASON OF VACANCIES

## OPINION OF THE COURT BY NAKAMURA, J.

We granted certiorari because of an inconsistency between the Intermediate Court of Appeals' application of the usury statute[1] in this case and our reading of the statute in *Dang v. F and S Land Development Corp.*, 62 Haw. 583, 618 P.2d 276 (1980). Although the intermediate appellate court correctly set aside the circuit court's award of summary judgments to defendants-appellees, it nonetheless erred in other respects. For a review of the underlying transaction indicates the loan was not necessarily usurious, even though the promissory note evidencing the loan called for the payment of interest at an ostensibly usurious rate. We therefore affirm the reversal of the award of summary judgments to defendants-appellees, but remand the case to the circuit court for further proceedings consistent with this opinion, rather than that of the intermediate appellate court.

### I.

The parties to the transaction giving rise to the controversy were Plaintiff-appellant Maurice Lee Silver (Silver), Defendant-appellee Peter T. George (George), and Defendant-appellee William H. Krutzer, III (Krutzer). Krutzer is Silver's stepson, and George was a close personal friend and a former business associate of Silver. The

---

[1] The portion of the usury law at issue here is HRS § 478-4, which reads:

*Usury not recoverable.* If a greater rate of interest than one per cent a month is contracted for, the contract shall not by reason thereof, be void. But if in any action on the contract proof is made that a greater rate of interest than one per cent a month has been directly or indirectly contracted for, the plaintiff shall only recover the principal and the defendant shall recover costs; provided, that any bank may charge, contract for, receive, collect in advance, or recover interest, discount, and other charges at the same rates and in the same amounts as permitted by law in the case of loans made by industrial loan companies licensed under chapter 408, if in relation to the contract such bank shall be in compliance with sections 408-15 and 408-17 applicable to licensees under chapter 408. If interest has been paid, judgment shall be for the principal less the amount of interest paid. This section shall not be held to apply to contracts for money lent upon bottomry bonds or upon other maritime risks nor to loans made under chapter 408.

pertinent transaction was a purported loan of $100,000 made in 1973 by Silver which was memorialized by a promissory note specifying the payment of interest at the rate of 20%.[2] The note was prepared by Defendant-appellee Robert J. Smolenski (Smolenski), then an associate in the law firm of Torkildson, Katz & Conahan, a Law Corporation (also a defendant-appellee).

Silver maintains he borrowed $100,000 from the First Hawaiian Bank, the Bank of Hawaii, and Bache & Company at the instance of George and Krutzer, who were engaged in a natural gas venture and in urgent need of money to complete a pipeline to deliver natural gas to Monroe, Louisiana. He claims the money was obtained through separate loans at interest rates ranging from ten to fourteen percent and delivered to Defendant-appellee Pace Corporation, a corporation of which George was the principal stockholder and Krutzer an officer, pursuant to an agreement that they would repay the principal sum and the "costs of borrowing the $100,000, plus interest at 6%." He further maintains there was an understanding among the parties that Smolenski would prepare "the necessary papers" and that the Pace Corporation would pay the "legal fees". Silver also asserts the high "interest" recited in the promissory note was intended to cover the "costs of borrowing" the principal amount, as well as interest at six percent. Thus he believed the "20% interest on the face of the note was a legal and proper rate of interest," and would not have entered into the agreement if Smolenski, George;

---

[2] The note read, in relevant part, as follows:

FOR VALUE RECEIVED, the undersigned hereby promise to pay to the order of MAURICE LEE SILVER the principal sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) sixty (60) days from the date hereof, together with accrued interest on the unpaid balance of said principal amount at the rate of twenty per cent (20%) per annum from the date hereof, until the principal amount hereof shall have been paid in full. $25,000.00 of the principal amount hereof may be repaid by the undersigned by transferring to Maurice Lee Silver all of the undersigned's working interest in one (1) Monroe Gas Rock Well, located in Monroe, Louisiana, provided that Maurice Lee Silver agrees to accept such working interest as full payment of said $25,000.00 of the principal amount hereof.

This Promissory Note is secured by the pledge of 510 shares of the capital stock of Louisiana Gas Gathering Company, a Louisiana corporation, represented by stock certificates Nos. 4 and 5.

It was signed by William H. Krutzer, III and Peter T. George, who were identified as "President, Pace Corporation" and "Director, Pace Corporation", respectively.

Krutzer, "or any lawyer from the firm of Torkildson, Katz & Conahan had informed him that the transaction was usurious."[3]

When the loan was not repaid, Silver brought suit in the circuit court to enforce the terms of the promissory note. But George and Krutzer asserted the defense of usury; and since HRS § 478-4 limits recovery under a usurious loan to the principal sum, Silver was only able to secure a judgment for such amount.[4] He therefore sought recompense through another means. And in the action now before us he prayed for a reformation of the promissory note to reflect the actual agreement of the parties, damages occasioned by the fraud allegedly committed by defendants-appellees, and damages flowing from Smolenski's alleged negligence in drafting the instrument.

All of the defendants-appellees were granted summary judgments by the circuit court. The summary judgment awarded Smolenski and Torkildson, Katz & Conahan was obviously based on the court's assumption that there was no attorney-client relationship between the lawyers and Silver. His appeal from the award of summary judgments emphasized those aspects of the suit covering attorney malpractice. The appeal was assigned to the Intermediate Court of Appeals for hearing and disposition.

We find no fault with the court's ultimate decision to reverse the circuit court's award of summary judgments to defendants-appellees. But we chose to review the case because of the serious implications in the appellate court's conclusions that there was a "flat out violation of § 478-6, HRS,"[5] the criminal provisions of our usury

---

[3] The resume of "facts" in this paragraph is drawn for the most part from Silver's affidavit submitted to the circuit court in opposition to the summary judgment motions filed by defendants-appellees.

[4] The circuit court's judgment in the suit on the note was entered prior to our decision in Dang v. F and S Land Dev. Corp., *supra,* where we construed HRS § 478-4 and delineated the requisite elements of a usurious loan.

[5] HRS § 478-6 reads as follows:

*Usury; penalty.* Except as otherwise permitted by law, any person who directly or indirectly receives any interest, discount, or consideration for or upon the loan or forbearance to enforce the payment of money, goods, or things in action, at a rate greater than one per cent a month or who, by any method or device whatsoever, receives or arranges for the receipt of interest, increase, or profit at a greater rate than one per cent a month on any loan made by him shall be guilty of usury and shall be fined not more than $250, or imprisoned not more than one

statute, and it was a "per se violation of an attorney's duty for him to draw a note which is on its face usurious," *Silver v. George,* 1 Haw. App. 331, 332-33, 618 P.2d 1157, 1159 (1980).

## II.

The precepts governing the review of summary judgments are succinctly summarized in *Technicolor, Inc. v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976), where we said:

> On review of a summary judgment proceeding, the standard to be applied by this court is identical to that employed by the trial court. WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil § 2716. This means that ". . . the inferences to be drawn from the underlying facts alleged in the materials (such as depositions, answers to interrogatories, admissions and affidavits) considered by the court in making its determination must be viewed in the light most favorable to the party opposing the motion." *Gum v. Nakamura,* 57 Haw. 39, 549 P.2d 471 (1976); *Aku v. Lewis,* 52 Haw. 366, 477 P.2d 162 (1970); *Abraham v. Onorato Garages,* 50 Haw. 628, 446 P.2d 821 (1968). Further, in considering the validity of the granting of summary judgment under H.R.C.P. Rule 56(c), the appellate court must determine whether any genuine issue as to a material fact was raised and, if not raised, whether the moving party was entitled to judgment as a matter of law. *Abraham v. Onorato Garages, supra.*

57 Haw. at 118-19, 551 P.2d at 168. Thus we are obliged to view the inferences to be drawn from the materials considered by the circuit court in a most favorable light to Silver. When this is done, we cannot conclude the relevant transaction was usurious.

## A.

We held in *Dang v. F and S Land Development Corp., supra,* that a transaction is tainted by usury when five elements are present:

(1) money or its equivalent as the subject matter; (2) a loan or

---

year, or both. The rate of one per cent a month shall cover all commissions, fees, charges, interest, increase, and profit of every character whatsoever.

Hence, a person in Silver's situation might be open to criminal prosecution if the mere recital of interest of more than one percent a month is a violation of the section.

forbearance, either express or implied; (3) an understanding that the principal is absolutely repayable; (4) the exaction of interest in excess of that allowed by law; and (5) an intent to engage in a transaction that carries a rate of interest disallowed by law.

62 Haw. at 591, 618 P.2d at 281. There is no question that the agreement among Silver, George, and Krutzer contained the first three integrants of an illegal arrangement. Moreover, the promissory note gives evidence of at least an attempt to exact "interest in excess of that allowed by law" as well as "an intent to engage in a transaction that carries a rate of interest disallowed by law." Still, we have said it is the substance of an arrangement, rather than its outward form, that determines whether a particular agreement is usurious. *Id.* at 588, 618 P.2d at 280. *See also Kawauchi v. Tabata,* 49 Haw. 160, 171, 413 P.2d 221, 227 (1966). Looking at the actual agreement among the parties in the most favorable light to Silver, we are unable to conclude the transaction in question harbored all of the elements of usury.

In the affidavit submitted to the circuit court, Silver claimed there was no intent on his part to enter into a usurious agreement. However, we have said that the necessary showing in this regard "is not proof of a willful design to violate the statute." *Dang v. F and S Land Development Corp., supra,* 62 Haw. at 592, 618 P.2d at 282. "The applicable test is whether the agreement, if performed according to its terms, would produce a higher rate of interest than allowed by law for the lender, and whether such result was intended." *Id.*

The agreement in question was not a typical commercial transaction. It involved a stepfather on one hand and his stepson and his close personal friend and business associate on the other; its purpose was to fulfill an urgent short-term need for a substantial sum of money on the part of the borrowers and their apparent inability to otherwise secure the necessary sum. The parties were fully aware the lender would obtain the money from lending institutions through short-term loans at prevailing interest rates specifically for this purpose. That the borrowers further understood the "20% interest on the face of the note" was not the actual interest exacted for the loan may be inferred under the circumstances. And since Silver had obligated himself to pay the commercial lenders interest at ten to fourteen percent, his claim that the "20% interest" was actually

meant to cover "the costs of borrowing the $100,000" and to produce interest at a legal rate is not unreasonable. Viewing the transaction as a whole and drawing the inferences most favorable to him, we agree the requisite intent to engage in usury was probably absent.[6]

### B.

Our holding that the promissory note was not a "flat out violation of § 478-6, HRS" also leads to the further conclusion that its preparation in the form presented to the parties was not a "per se violation of an attorney's duty." While the instrument did not reflect the agreement in the most accurate manner, we cannot conclude the preparation of the note in itself represented legal malpractice.

The decision of the Intermediate Court of Appeals reversing the circuit court's award of summary judgments to defendants-appellees is affirmed. The case, however, is remanded to the circuit court for further proceedings consistent with this opinion.

*Richard E. Stifel (Goodsill, Anderson & Quinn,* of counsel) for defendants-appellees Robert J. Smolenski and Torkildson, Katz & Conahan.

*Dennis E. W. O'Connor* and *Erik R. Zen (Hoddick, Reinwald, O'Connor & Marrack,* of counsel) for defendants-appellees George, et al.

*Joseph A. Ryan* and *George T. Davis (Ryan & Ryan,* of counsel) for plaintiff-appellant.

---

[6] We do not mean to imply that a lender's cost of borrowing money is not to be considered as interest in other situations, particularly where commercial lenders are involved. Our holding here is, of course, limited to the pertinent fact situation where there were close personal relationships and it may reasonably be inferred that the parties to the transaction actually intended the payment of interest at a legal rate rather than at the usurious rate recited in the promissory note evidencing the transaction.