RICHARD KANG and NANCY KANG, Individually and as Next Friend of EVERT KANG and ERIK KANG, Minors, Plaintiffs-Appellants, and INDUSTRIAL INDEMNITY INSURANCE COMPANY OF HAWAII, ·LTD., Plaintiff, *v.* CHARLES PANKOW ASSOCIATES, Defendant-Appellee, and GLEN D. PLUID, Defendant

NO. 8917

(CIVIL NO. 2386)

JANUARY 5, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

Plaintiffs Richard Kang and Nancy Kang, individually and as next friend of Evert Kang and Erik Kang, minors (collectively Appellants), appeal the summary judgment in this negligence action which held that defendant Charles Pankow Associates (Pankow) was not vicariously liable as a matter of law under the doctrine of *respondeat superior* for the damages suffered by Appellants. We find no error and affirm.

Viewed in the light most favorable to Appellants, the record reveals the following facts. Pankow is a general contractor. Defendant Glen D. Pluid (Pluid) is a carpenter by trade. Pluid first worked for Pankow at Camp Pendleton, California. After being laid off by Pankow, Pluid worked for some small companies and was also self-employed in California.

Subsequently, Pluid wanted to work for Pankow again. He telephoned Tony Giron, a Pankow superintendent, who was then working in Hawaii. About two weeks after being offered a job, Pluid arrived in Hawaii at his own expense. He initially worked for Pankow's Kawaiahao Plaza project and, thereafter, on three other Pankow projects in Honolulu. Pluid was a working foreman on each of these projects.

After the completion of the last project in Honolulu, Jack Parker (Parker), Pankow's superintendent for "The Cliffs at Princeville" condominium project (Princeville project) at Princeville, Kauai, offered Pluid a general foreman's position. Unfortunately, two weeks later on July 31, 1979, his girlfriend, Sandra Yamashiro (Sandra) was murdered. Shocked by the tragedy, Pluid returned to the mainland United States.

Upon returning to Honolulu 20 days later, Pluid learned that the general foreman's position offered him had been filled. However, on September 6, 1979, Parker hired Pluid as a journeyman carpenter for the Princeville project. Pluid considered himself to be a *bona fide* resident of Oahu.[1] After two months, Pluid was promoted to working foreman. Pursuant to the union contract, Pluid and all Pankow employees who came to Kauai from Oahu to work on the Princeville project received, in addition to wages, per diem subsistence allowances to cover housing and food expenses. Pankow's Kauai employees were reimbursed for their home to job site travel on a mileage basis.

Pluid's transportation to Kauai was paid for by Pankow. In addition, Pankow permitted its Princeville project employees from Oahu to fly from Kauai back to Oahu on weekends at the company's expense. Pluid took advantage of this benefit on a couple of occasions before it was discontinued. Other than the benefits listed above, Pankow did not pay any of Pluid's living or travel expenses.[2]

---

[1] Due to the indefinite nature of Pluid's residence on Kauai, he received his mail at a Pankow post office box address and his telephone calls via a Pankow number. After the accident, Pluid moved to Kauai.

[2] John Wong, Pluid's co-worker on "The Cliffs at Princeville" project (Princeville project), testified that "Pankow had a deal on some condos near the jobsite." Deposition of John Wong at 74. However, Pluid never rented a condominium from Pankow. After a month of living with Jack Parker, his supervisor on the Princeville project, Pluid rented a house with several other Pankow employees.

Pluid's normal working day on the Princeville project was from 7:00 a.m. to 3:30 p.m., Monday through Friday. Pankow paid overtime compensation for work done past 3:30 p.m. Pluid signed daily time cards reflecting the hours worked and was paid from his time of arrival at the job site to the time of leaving. Pankow gave Pluid no responsibilities or duties and "exercised no control over any of [his] activities outside of regular working hours." Affidavit of Glen D. Pluid, attached to Pankow's Motion for Summary Judgment.

Since Pluid considered the Princeville-Hanalei area "remote" and "isolated" (Deposition of Pluid at 71), he shipped a Mazda RX-7 sportscar (the Mazda) to Kauai at his own expense. Pursuant to the terms of the union contract, Pankow provided the employees with a parking lot next to the job site, but did not encourage Pluid to ship over the car. Other than not permitting personal cars on the work location, Pankow never gave directions nor imposed any regulations on the use of the employees' personal cars. Pluid did not use the Mazda for work purposes. Company vehicles were provided for use on the job, and Pluid did not use them when not at work.

On February 15, 1980, Pluid reported to work at the Princeville project as usual. He signed his daily time card at 3:30 p.m., reflecting the end of his work day. Pluid then left the job site to go to the bank. After cashing his paycheck, he went to the nearby Chuck's Steakhouse for a few beers. Pluid left for home at a little past 5:00 p.m., where he showered, "messed around the house . . . and got ready to go to town. . . ." Deposition of Pluid at 86. At about 7:00 p.m., he left his house to drive to the Bullshed restaurant near Kapaa to meet John Wong (Wong), Pluid's friend and co-worker, and their girlfriends. The dinner party was a purely social activity.

While driving the Mazda on Highway 56 towards Kapaa, Pluid collided with a pickup truck driven by Richard Kang (Kang). Due to the impact, Kang was thrown a considerable distance from the truck. Both Kang and his female passenger were seriously injured. The accident rendered Kang a paraplegic.

On November 20, 1980, Appellants and co-plaintiff Industrial Indemnity Insurance Company of Hawaii, Ltd. (Industrial) sued Pluid and Pankow alleging Pluid's negligence as the cause of the accident and Pankow's vicarious liability as Pluid's employer. Appellants sought recovery of special and general damages, and Industrial claimed reimbursement for workers' compensation benefits paid to

Kang. On January 6, 1981, Pankow answered, denying liability. Pluid failed to plead and default was entered against him on April 22, 1981.

On June 10, 1981, Pankow moved for summary judgment, which was granted on August 12, 1981.

On June 8, 1982, a default judgment was entered against Pluid in the total amount of $4,705,968.78. On July 2, 1982, Appellants filed their notice of appeal.[3]

I.

The standard applicable to an appellate court's review of a summary judgment "is identical to that applicable to the trial court's consideration of the motion." *Munoz v. Yuen,* 66 Haw. ____, ____, 670 P.2d 825, 827 (1983). *See also Silver v. George,* 64 Haw. 503, 644 P.2d 955 (1982); *Technicolor, Inc. v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976). Thus, a motion for summary judgment should be granted only "where, from the record, there is no genuine issue as to any material fact and movants clearly demonstrate they should prevail as a matter of law." *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982). *See also Iuli v. Fasi,* 62 Haw. 180, 613 P.2d 653 (1980); *Miller v. First Hawaiian Bank,* 61 Haw. 346, 604 P.2d 39 (1979). Additionally, the inferences to be drawn from the underlying facts in the record must be viewed in the light most favorable to the non-moving party. *Fernandes v. Tenbruggencate,* 65 Haw. 226, 649 P.2d 1144 (1982); *Silver v. George, supra; Technicolor, Inc. v. Traeger, supra.*

Appellants contend that (1) there are genuine issues of material fact in the record and (2) if the inferences drawn from the undisputed underlying facts are viewed in the light most favorable to them, there is a genuine issue of material fact whether Pluid was acting within the scope of his employment at the time of the accident. Consequently, they claim that summary judgment was improper in this case. We disagree.

---

[3] Plaintiff Industrial Indemnity Insurance Company of Hawaii, Ltd. did not join in the appeal.

## II.

Initially, Appellants argue that there is a genuine dispute regarding the ownership of the Mazda.[4] They contend that if an employee was operating his employer's vehicle at the time of an accident, there is a presumption that he was acting within the scope of his employment and, consequently, the ownership of the Mazda is a material fact. They assert that the Motor Vehicle Accident Report prepared by Officer Arinaga of the Kauai Police Department "lists 'Chas. Pankow & Assoc.' as the owner of the vehicle Pluid was driving." Opening Brief at 38. We disagree that the accident report lists Pankow as the owner of the Mazda.

The following information appears on successive lines in the accident report. Regarding "Vehicle No. 1," it lists "FLUID [sic], GLEN" as the driver, "P.O. Box 110 Hanalei" as his address, "Chas. Pankow & Assoc." as his "Place of Employment," and "As Above" as the owner. Concerning "Vehicle No. 2," it specifies "KANG, RICHARD" as the driver, "2217 Akeukeu St., Pearl City, HI" as his address, "S. Oshiro" as his "Place of Employment," and "S. Oshiro Inc." as the owner.

Appellants argue that the words "As Above" in the accident report refer to "Chas. Pankow & Assoc." and, thus, Pankow is the owner of the Mazda. Viewing the accident report as a whole, the only reasonable inference is that "As Above" refers to Pluid, the driver of Vehicle No. 1. This inference is consistent with Officer Arinaga's notation of "S. Oshiro Inc." rather than "As Above," for the owner of Vehicle No. 2. By writing in "As Above," Officer Arinaga meant driver Pluid.

The affidavit of Officer Arinaga merely states that the information contained in the accident report "was obtained in the course of [his] investigation and said information is true and correct to the best of [his] knowledge, information and belief." Record at 240. Officer Arinaga could have, but did not, clarify who "As Above" referred to in the accident report.

Arrayed against appellants' distorted interpretation of the accident report is the overwhelming evidence in the record showing that

---

[4] Except for the ownership of the Mazda, Appellants do not claim any other genuine issue of material underlying facts.

Pankow was not the owner of the Mazda. When deposed, Pluid testified that he and Sandra purchased the Mazda. Both Parker and Wong testified on deposition that Pankow did not own the Mazda. Moreover, a certified copy of the Certificate of Registration covering the Mazda lists Sandra as the registered owner and Pacco Employees Federal Credit Union (Pacco) as the legal owner. The depositions of Joyce Yoshioka, Assistant Treasurer of Pacco, and Ron Brandvold, Unit Claim Manager of Allstate Insurance, reveal that (1) Pluid and Sandra purchased the Mazda from Wholesale Motors, Inc.; (2) Sandra, as a member, applied for and obtained a loan from Pacco for the purchase of the Mazda; and (3) as the registered owner of the Mazda, Sandra had insurance coverage from Allstate Insurance.

Pankow met its burden of showing that there was no genuine issue regarding the ownership of the Mazda. *See State v. Midkiff*, 49 Haw. 456, 421 P.2d 550 (1966); *Mossman v. Hawaiian Trust Co., Ltd.*, 45 Haw. 1, 361 P.2d 374 (1961). We hold that the record shows that Pankow was not the owner and there is no triable issue regarding this material fact. *See First National Bank v. Cities Service Co.*, 391 U.S. 253, 88 S. Ct. 1575, 20 L.Ed.2d 569 (1968).

### III.

Appellants contend that (1) from the undisputed underlying facts, it can be reasonably inferred that Pluid's trip at the time of the accident was "incidental to and in furtherance of . . . Pankow's business" (Opening Brief at 14); (2) therefore, there is a genuine issue of material fact regarding the "scope of employment" question; and (3) consequently, the granting of summary judgment was error. We hold, however, that the underlying facts lead to but one reasonable inference and conclusion: that Pankow is not vicariously liable under the doctrine of *respondeat superior* and that the trial court properly granted summary judgment as a matter of law.

### A.

Appellants' contention requires a discussion of the doctrine of *respondeat superior*. Under this doctrine, "the employer is held accountable and liable for the negligent acts of its employees." *Hulsman v. Hemmeter Development Corp.*, 65 Haw. at 61, 647 P.2d at 717. *See also*

*Matsumura v. County of Hawaii,* 19 Haw. 496 (1909). However, recovery under the doctrine requires that the employee's "act complained of must have been within the scope of the employment." *Abraham v. Onorato Garages,* 50 Haw. 628, 632, 446 P.2d 821, 825 (1968). *See also Costa v. Able Distributors, Inc.,* 3 Haw. App. 486, 653 P.2d 101 (1982).

Restatement (Second) of Agency § 228 (1958) states in pertinent part:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits; [and]

(c) it is actuated, at least in part, by a purpose to serve the master, . . . .

\* \* \* \* \*

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

In *Costa v. Able Distributors, Inc.,* 3 Haw. App. at 490, 653 P.2d at 105, we stated that for an employee's act to be "within the scope of employment, there usually must be some direct benefit to the employer" and a showing "that the employee intended to act in the employer's interest." The *Costa* tests fall within the Restatement rule that an employee's act or conduct must be "actuated, at least in part, by a purpose to serve" the employer.

Whether the employee is acting within the scope of his employment is "a question of fact to be determined in the light of the evidence of each particular case." *Nordmark v. Hagadone,* 1 Haw. App. 487, 489, 620 P.2d 763, 765 (1980). However, where the facts are susceptible of but one reasonable conclusion, the question may become a question of law for the court. *See Miller v. Reiman-Wuerth Co.,* 598 P.2d 20 (Wyo. 1979).

B.

The underlying facts of this case show that Pluid was involved in the accident several hours after he had finished work for the day and left the job site. He was neither going to nor coming from the

Princeville project work area. In fact, in the intervening period, Pluid had gone to the bank, had a few beers at a restaurant, and returned home. The accident occurred nowhere near the Princeville project. At the time of the accident, Pluid was driving to the Bullshed restaurant to meet friends for a purely social occasion. The Mazda was neither owned nor insured by Pankow. Pankow neither required Pluid to have a car for work purposes nor imposed any restrictions regarding its use.

The foregoing facts clearly show that Pluid's act at the time of the accident was not "of the kind he [was] employed to perform" and did not occur "substantially within the authorized time and space limits." Furthermore, from the underlying facts, no reasonable inference can be drawn that Pluid's driving to the Bullshed restaurant was "actuated, at least in part, by a purpose to serve [Pankow]" or was of "some direct benefit to [Pankow]" or that Pluid "intended to act in [Pankow's] interest." The only reasonable conclusion, therefore, is that Pluid was not acting within the scope of his employment at the time of the accident.

Nevertheless, Appellants argue that Pluid's driving to the Bullshed restaurant was "incidental" to the service he performed for Pankow and was in furtherance of Pankow's business. Since Pluid, an Oahu resident, was hired to work on Kauai, was transported there at Pankow's expense, and was paid a per diem subsistence allowance, Appellants contend that a jury could reasonably find that "Pluid's presence on Kauai was in furtherance of his employer's business and his trip to dinner the night of the accident was incidental to his employment with Pankow." Opening Brief at 23. Appellants bluntly state that "Pluid would not have been residing on Kauai at the time of the accident but for his employment with Pankow" (Reply Brief at 7) and imply that Pankow could be found liable.

We do not believe that the *respondeat superior* doctrine is so pliant that where an employee is hired in one locality and relocated to another by his employer for an indefinite period of time, any act of the employee before, during, or after his working hours is one within the scope of his employment as long as he works for the employer in the latter locality. Furthermore, we are unaware of any reported tort case so holding. The cases of *Hynes v. Donaldson,* 155 Colo. 456, 395 P.2d 221 (1964) (accident occurred while employee

was familiarizing himself with the new place of employment in another city as instructed by his employer), and *Merchants National Bank of Cedar Rapids v. Waters,* 447 F.2d 234 (8th Cir. 1971) (accident occurred while employee was driving to his new place of employment in another state where he was transferred by his employer), do not support Appellants' contention. In those cases, the accidents occurred during the employees' commission of acts which directly benefited the employers.

Appellants have cited a number of other cases and principles in their appeal. However, the cases in which the tortious act occurred while the employee was attending training classes sponsored by his employer in a resort area, *Makoske v. Lombardy,* 47 A.D.2d 284, 366 N.Y.S.2d 475 (1975), while the employee was attending a sales convention, *International Business Machines, Inc. v. Bozardt,* 156 Ga. App. 794, 275 S.E.2d 376 (1980), while a labor union business agent was in another town on a short union business trip, *United Brotherhood of Carpenters & Joiners of America v. Salter,* 114 Colo. 513, 167 P.2d 954 (1946), and other cases involving analogous facts are inapposite. Additionally, the case of *Mauk v. Wright,* 367 F. Supp. 961 (M.D. Pa. 1973), involving "potential" control by an employer over a professional football player attending its summer training camp during his free time is not pertinent. The indefinite length of Pluid's stay on Kauai and Pankow's lack of even "potential" control over him during the off work hours are crucial distinguishing factors.

Finally, Appellants contend, in essence, that the policy reason for the imposition of vicarious liability on the employer under the *respondeat superior* doctrine is to spread the risk of loss and the employer is "in a better position than the employee to absorb and distribute the cost of the risk." Opening Brief at 44. They claim, therefore, that policy considerations decree that liability be imposed on Pankow in this case.

We are aware that a justification for the *respondeat superior* doctrine is "the fact that the employer may spread the risk through insurance and carry the cost thereof as part of his costs of doing business." *Johnston v. Long,* 30 Cal.2d 54, 64, 181 P.2d 645, 651 (1947). *See also* 2 F. Harper & F. James, *The Law of Torts* § 26.7 (1956). Even under such public policy justification, however, the liability imposed upon the employer is not open-ended and unlimited.

The employer's liability is limited by the test of whether the employer's risks are incident to his enterprise, 2 F. Harper & F. James, *supra*, § 26.7; *Hinman v. Westinghouse Electric Co.*, 2 Cal.3d 956, 88 Cal. Rptr. 188, 471 P.2d 988 (1970), or the "enterprise theory" which finds liability if "the enterprise of the employer would have benefited by the context of the act of the employee but for the unfortunate injury." *Fruit v. Schreiner*, 502 P.2d 133, 140 (Alaska 1972). *See Luth v. Rogers and Babler Construction Co.*, 507 P.2d 761 (Alaska 1973). Based on the underlying facts in this case, we believe that the "risk incident to the employer's enterprise" test or the "enterprise theory" test would preclude imposition of liability on Pankow.

### C.

Appellants contend that (1) other jurisdictions apply the rationale used in determining whether an injury arose "out of and in the course of employment" in workers' compensation cases to the resolution of "scope of employment" issues under the *respondeat superior* doctrine in tort cases, *Harris v. Trojan Fireworks Co.*, 120 Cal. App.3d 157, 174 Cal. Rptr. 452 (1981); *Rodgers v. Kemper Construction Co.*, 50 Cal. App.3d 608, 124 Cal. Rptr. 143 (1975); (2) the workers' compensation administrative decisions in Hawaii hold that traveling employees are continuously within the scope of employment while away from home; (3) the rationale of such decisions should be applied to this case; and (4) upon such application, Pluid's action on Kauai at the time of the accident would be within the scope of his employment. We disagree.

The Hawaii workers' compensation law accords to the employee a presumption that his "claim is for a covered work injury,"[5] mean-

---

[5] Hawaii Revised Statutes (HRS) § 386-85, provides:

§ 386-85 *Presumptions.* In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary:

(1) That the claim is for a covered work injury;

(2) That sufficient notice of such injury has been given;

(3) That the injury was not caused by the intoxication of the injured employee; and

(4) That the injury was not caused by the wilful intention of the injured employee to injure himself or another.

ing that the injury arose "out of and in the course of employment." The statutory presumption has been liberally construed in favor of the employee and it "cast[s] a heavy burden on the employer." *Akamine v. Hawaiian Packing & Crating Co., Ltd.,* 53 Haw. 406, 409, 495 P.2d 1164, 1166 (1972). *See also Chung v. Animal Clinic, Inc.,* 63 Haw. 642, 636 P.2d 721 (1981); *DeFries v. Association of Owners,* 57 Haw. 296, 555 P.2d 855 (1976).

Hawaii tort law does not include any analogous presumption. An employee's tortious act is not presumed to have been committed within the scope of his employment and the plaintiff bears the burden of proving this essential element in order to impose vicarious liability on the employer. Thus, we find it grossly unfair to transpose the rationale in workers' compensation decisions to *respondeat superior* tort cases and will not do so in our jurisdiction. *Cf. Church v. Arko,* 75 Cal. App.3d 291, 142 Cal. Rptr. 92 (1977); *Beard v. Brown,* 616 P.2d 726 (Wyo. 1980).

IV.

We hold that there is no genuine issue of material fact and the only reasonable inference and conclusion that may be drawn from the facts is that Pluid's action at the time of the accident was not within the scope of his employment. *See Costa v. Able Distributors, Inc., supra; Golden West Broadcasters, Inc. v. Superior Court,* 114 Cal. App.3d 947, 171 Cal. Rptr. 95 (1981); *Miller v. Reiman-Wuerth Co., supra. See also De Los Santos v. State,* 65 Haw. 608, 655 P.2d 869 (1982). Pankow was entitled to a summary judgment as a matter of law.

Affirmed.

*Herbert R. Takahashi (Linda K. Goto* with him on the briefs; *Herbert R. Takahashi,* Attorney at Law, a Law Corporation, of counsel) for plaintiffs-appellants.

*Barry M. Kurren (Edmund Burke* and *Brian Aburano* with him on the brief; *Burke, Ashford, Sakai, McPheeters, Bordner & Gilardy,* of counsel) for defendant-appellee.